Morris SHANE, Paul Bankoff & Rose Flaxman, trading as B. &F. Door Mfg. Co., Appellees,

v.

WARNER MFG. CORP., a New Jersey Corporation, Appellant.

No. 11694.

United States Court of Appeals Third Circuit.

Argued Dec. 9, 1955.

Decided Feb. 1, 1956.

**208**

Andrew B. Crummy, Newark, N. J.
(Crummy, Consodine, Gibbons & O'Neill,
Paul T. Murphy, Newark, N. J., on the
brief), for appellant.

David S. Malis, Philadelphia, Pa.,
(Benjamin Asbell, Camden, N. J., How-
ard Wallner, Malis, Malis & Malis, Phila-
delphia, Pa., on the brief), for appellees.

Before McLAUGHLIN, KALODNER
and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

A jury trial in this diversity case re-
sulted in an award of damages for breach
of contract to the plaintiff partnership,
hereinafter called Shane, against the de-
fendant corporation, hereinafter called
Warner. There was also an unsuccess-
ful counterclaim by Warner, but this ap-
peal is concerned only with Shane's claim
and recovery thereon of a money judg-
ment in the amount of $79,153.28.

Shane manufactured and sold storm
doors. Its basic door was a shell of wood
with vacant panels. Removable alumi-
num inserts fitted into these panels.
Fittings for each door included two solid
aluminum sash inserts to afford storm
protection and interchangeable alumi-
num frame inserts for screens. It was
these aluminum inserts which Warner
contracted to fabricate in accordance
with Shane's specifications. The con-
tract required Warner to deliver and
Shane to accept 300 inserts per week for
a period of one year, and gave Shane the
privilege of taking up to 200 additional
units per week. Five sizes were set out
in the contract with Shane free to specify
requirements among them. Less than
2000 sets of inserts were actually deliv-
ered during the year covered by the con-
tract. In this suit each party has claimed
a default by the other. The case was sub-
mitted to the jury on the theory that the
innocent party was entitled to recover
damages measured by the profits he
would have made if the contract had
been performed. The jury also was in-
structed that its verdict might include
interest at not more than 6% per annum
over a period not to exceed 5½ years.
The jury found, as well it might on the
evidence, that Warner had breached the
contract and returned a verdict of $105,-
273.57 in favor of Shane.

On a motion for a new trial, the
trial judge concluded that his instruction
authorizing an award of interest had
been erroneous. Accordingly, he pro-
posed to order a new trial unless Shane
should agree to a remittitur of interest,
calculated on the assumption that the
jury had included in its verdict as much
interest as the court's instructions per-
mitted, namely, 6% for 5½ years. By
stipulation, Shane agreed to this remit-
titur and judgment was entered for $79,-
153.28.

Warner now claims that there should
have been a new trial rather than this
remittitur because it is speculative
whether the jury included interest in its

verdict, and if so, how much. The short answer to this is that any uncertainty as to the amount of interest actually included in the verdict has been resolved in favor of Warner, for the remittitur eliminated the maximum amount that could have been the interest component of the $105,273.57 verdict. If the interest was in fact less than this maximum then the effect of the remittitur was to deprive Shane of part of the principal to which it was entitled. However, Shane has been willing to accept this possible loss in order to avoid a new trial. Warner has not been damaged and cannot be aggrieved by a remittitur thus calculated.

■ Warner also urges that the District Court erred in permitting the jury to take into the jury room a written computation of damages prepared by Shane's counsel. The record shows that at the court's suggestion counsel for Shane prepared a computation of damages on the principal claim predicated upon plaintiff's analysis of the evidence, and counsel for Warner a similar computation of damages thought to have been proved on the counterclaim. Actually, the jury received two alternative computations from Shane's counsel. Each of these computations used the figure $4.19 as the average profit Shane would have made on each door sold if Warner had supplied the aluminum inserts as agreed. The computations differed in the multipliers of this $4.19. In one, the multiplier was 300, the number of units Shane was obliged to take each week. In the other, the multiplier was 500, the number of units Shane was privileged to take and testified it would have taken and could have sold each week. In both computations, this weekly total was multiplied by 52 to obtain a total profit for the full contract year. Finally, in each computation the number of units actually delivered by Warner was eliminated to give full credit for that partial performance.

One question now raised is whether the unit profit figure, $4.19, used in these computations had any basis in the evidence. The record shows testimony that had Warner supplied the promised inserts, Shane could and would have sold the completed doors for an average price of $18.50. There was also testimony that Shane's costs, also calculated on a unit basis, amounted to $14.31, of which $10.41 represented material, $.90 represented labor and $3.00 was overhead. The difference between $18.50 and $14.31 is the $4.19 used in Shane's computation of its damages. Certainly, the jury was entitled to believe the testimony that this unit profit would have been earned but for Warner's default.

More generally, it is argued that it is error to send this kind of data to the jury room. However, in submitting the written computations to the jury the trial judge was careful to explain the limited purpose of this submission and that the computations did not constitute evidence. This part of the charge was in the following language:

"These figures are good, as is that exhibit that was prepared by Mr. Warner at my request, if the figures therein stated are borne out by the evidence that was produced in this court, because if these figures are not borne out by the evidence as you heard it, you disregard them completely. But I thought since there were six days of trial, and so much mathematics here, that it might help you to get each side to write down what it contends the damages could be under the facts proven in this case. Mind you, I said, 'could be', not 'must be', because you determine the damages, not me.

"Now, the plaintiff says that from the testimony they feel that they have demonstrated to you [here follows a statement of the computations in detail]

\* \* \* \* \* \*

"That is what they calculate. And unless you are satisfied by the evidence and by the rules of law which I gave you that they are entitled to either of these amounts, of course, you disregard this; if you feel they

are entitled to less, if they are entitled to anything, you give them what you, in your judgment, think they are entitled to."

If the jury made its own decision as to what evidence merited belief and used the computations only as the court directed there could be no basis for objection. Apparently, Warner's complaint is that, despite the court's instruction to the contrary, jurors having a paper exhibiting such computations before them are likely to treat it as evidence and permit it to influence their judgment of the facts.

■ Any force this argument might have is weakened here by the fact that both parties submitted written computations of their claims to the jury. But regardless of this, we think the submission of any such material to a jury with careful instructions as to its use and limited significance is within the discretion which should be accorded the trial judge in order that he may guide and assist the jury in understanding and judging the factual controversy. And, as we understand it, such is the law of New Jersey where this diversity case was tried. As early as 1886 the Supreme Court of New Jersey decided that a paper containing a detailed computation of a party's claim, though not in evidence, might properly be taken to the jury room with appropriate explanatory instructions as to its use and significance. Rorer v. Rorer, 48 N.J.L. 50, 3 A. 67. And subsequent citations of this case with approval indicate that it continues to be recognized as stating the law of New Jersey. Portley v. Hudson & M. R. Co., 1934, 113 N.J.L. 13, 172 A. 384; In re Collins' Will, 1940, 18 N.J.Misc. 492, 494, 15 A.2d 98, 100.

Appellant makes several other contentions, including objections to rulings of the trial court on the admissibility of evidence. We have examined each of these matters and are satisfied that no reversible error appears.

The judgment will be affirmed.