**Burman D. CATON and Dorothy Caton, Appellants,**

**v.**

**Donald L. HARDAMON, Administrator of Estate of Miles W. Payne, Appellee.**

**No. 73-1425.**

United States Court of Appeals, Seventh Circuit.

Heard Feb. 13, 1974.

Decided May 6, 1974.

Donald F. Foley, Indianapolis, Ind., for appellants.

Grace M. Curry, Indianapolis, Ind., for appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs, a West Virginia married couple, filed two diversity suits in the court below complaining of an Indiana defendant, Miles Payne. They alleged that in August 1969, Payne negligently drove his 1963 Buick automobile into plaintiffs' 1967 Yamaha motorcycle, causing the husband extensive injuries and damaging his motorcycle. The husband sought $50,000 damages and the wife sought $15,000 damages. After Payne's death, the present defendant was substituted as his administrator. At a consolidated trial the jury returned verdicts for defendant and judgments were entered thereon on the same date. In accordance with his customary practice, the district judge permitted the exhibits to be taken into the jury room during their deliberations. Exhibit A contained a prior inconsistent statement of a non-party witness admitted into evidence without objection. The sole question on appeal is whether the

district court erred in allowing Exhibit A to be taken to the jury room for consideration of the jurors during their deliberations. We hold that this was permissible and therefore affirm.

During the jury trial, Randy Love was an occurrence witness for the plaintiffs. Plaintiff Burman Caton testified that he entered the intersection as the traffic light changed from green to yellow. Two eyewitnesses testified that he entered the intersection on the red light. A third eyewitness, Randy Love, gave trial testimony that would support an inference that Caton entered the intersection before the change from yellow to red. During cross-examination of Love, defense counsel offered in evidence an inconsistent statement that Love had signed ten days after the accident corroborating the other two eyewitness' testimony that Caton had entered the intersection on the red light. Plaintiffs' counsel initially objected to the admission of the statement because defendant's counsel had not laid a proper foundation therefor. However, after defense counsel laid the usual foundation in order to impeach the witness, his prior statement was admitted without objection and marked as defendant's Exhibit A.

Twenty-six exhibits were admitted into evidence and were all sent to the jury room. Twenty-one of these exhibits were plaintiffs'; the remainder were defendant's, including the controversial Exhibit A.

Love's statement was received in evidence as a prior inconsistent statement for the purpose of impeaching his credibility. The following instruction was given by the district judge with respect to impeaching statements:

"The credibility of a witness may be impeached by proof that he made statements, either written or oral, out of court contrary to, and inconsistent with, what he testifies during the trial concerning matters material and relevant to the issues.

"If you find any witness has thus been impeached, you have the right to reject all the testimony of such witness, except in so far as the witness has been corroborated by other credible evidence in these cases.

"While it is proper for you to reject all of the testimony of a witness who has been impeached, yet I instruct you it would not be proper for you to consider such impeaching testimony as either tending to prove or disprove any of the material allegations of plaintiffs' complaints or defendant's answers, but such impeaching evidence can only be considered by you in determining the credibility of the witness. However, it is for you to determine whether the witness has in fact been impeached before you have the right to reject all or any part of the testimony of such witness."

Plaintiffs do not challenge this instruction but only assert that the district judge should not have permitted the impeaching Exhibit A to go to the jury room.

In a recent Indiana criminal case, the Supreme Court of Indiana held that it was error to allow the jury to take a witness' prior inconsistent statement to the jury room. Thomas v. State, 289 N.E.2d 508 (1972). If *Thomas* is binding here, we will of course follow it. However, we are more persuaded by Chief Justice Arterburn's dissent:

"I do not think we should be too restrictive or concerned with what the jury receives in the jury room for consideration, during its deliberations, so long as it is competent evidence. The fear that one part of evidence will be overly emphasized is more than counterbalanced by the fact that the memory of the jurymen may not be sufficient to retain details as to exhibits or testimony. Why should a juryman be required to rely upon memory, which can be erroneous and which can be corrected by the actual facts. We are seeking the truth after all." (289 N.E.2d at 510.)

Plaintiffs contend that under Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the district court

was required to follow the state rule adopted in the *Thomas* case. They argue that because the matter is important, it must be substantive. A corollary of this position would be that only trivial rules are procedural. We disagree. Plaintiffs' position was specifically rejected in a related context in Sibbach v. Wilson & Co., 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479:

"If we were to adopt the suggested criterion of the importance of the alleged right we should invite endless litigation and confusion worse confounded. The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law * * *."

The second sentence of the passage just quoted was repeated in Hanna v. Plumer, 380 U.S. 460, 464, 85 S.Ct. 1136, 14 L.Ed.2d 8, a case applying *Erie*.

■ Sending items to the jury room is "merely a form and mode of enforcing" the rights of the parties. See Byrd v. Blue Ridge Rural Electric Coop., Inc., 356 U.S. 525, 536, 78 S.Ct. 893, 900, 2 L.Ed.2d 953. It is hard to imagine any issue more procedural than the one here. In a pioneer decision under the Conformity Act, Nudd v. Burrows, 91 U.S. 426, 441–442, 23 L.Ed. 286, it was held that instructing the jury in writing was not the kind of procedure regulated by the Conformity Act, but rather a matter of "personal conduct and administration of the judge in the discharge of his separate functions" to be governed by "certain powers inherent in the judicial office." *Id.* at 442. Consequently, state practice is not relevant to what a federal court may send to the jury room. Pass v. Firestone Tire & Rubber Co., 242 F. 2d 914, 919 (5th Cir. 1957); see also Goins v. United States, 99 F.2d 147, 151 (4th Cir. 1938). Indiana law does not apply to this case.

■ Federal law is clear that a decision whether to send exhibits to the jury room is within the discretion of the trial judge. United States v. Gross, 451 F.2d 1355, 1358–1359 (7th Cir. 1971); Miller v. New York Central R.R., 239 F.2d 10, 14 (7th Cir. 1956); Shane v. Warner Mfg. Corp., 229 F.2d 207, 210 (3d Cir. 1956); *cf.* United States v. Cobb, 397 F.2d 416, 419 (7th Cir. 1968). Federal Rule of Civil Procedure 43(a) does not control this very issue, but its liberal spirit is instructive: federal district courts are to receive evidence admissible under either state or federal law, and the "rule which favors the reception of the evidence governs * * *." Since Exhibit A was properly admitted under Rule 43(a), the trial court was free to send it to the jury.

In permitting the exhibits to go to the jury room, Chief Judge Steckler remarked as follows:

"I feel the legal profession owes a duty to update some of the antiquated practices, techniques; and I think allowing the jury to have before them the exhibits while they are in deliberation is an updating of an archaic practice that obtained and still obtains in many, many courts. Lawyers do not want juries to actually predicate their verdict upon the actual concrete evidence if it doesn't fall in their favor. They would rather have the jury guess for the other side. Now, each feels that way. Each side feels that way. If the evidence is not so concretely in favor of that particular side in regard to a particular issue; rather than have the jury base its verdict upon the evidence, the real evidence, they would rather have the jury to operate in the dark and guess as to what was said during the trial three days earlier as to what particular pictures show or what particular exhibit indicated, what some lawyer said during the trial. They would rather have the jury to have one broad, glossy impression of what transpired during the trial, and then go forth and guess, and come to a conclusion."

We sympathize with these views and hold that the district judge acted within his discretion in sending Exhibit A to the jury room.

Judgments affirmed.