381 So.2d 896 (1980)
Exie RUSSELL, Plaintiff-Appellee,
v.
LLOYD'S TOWING SERVICE, INC., et al., Defendants-Appellants.
No. 14050.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1980.
Rehearing Denied April 3, 1980.
*897 John Paul Woodley, Shreveport, for defendants-appellants.
Jack & Jack by Paul W. Cary, Shreveport, for plaintiff-appellee.
Before HALL, MARVIN and McCLENDON, JJ.
En Banc Rehearing Denied April 3, 1980.
McCLENDON, Judge.
Defendant appeals from a trial court judgment awarding plaintiff $3,217.81 for damages sustained as a result of an accident which occurred when plaintiff's truck overturned while being towed by defendant's employee. We amend the amount of damages and affirm.
On September 1, 1977, plaintiff's pulpwood truck was being driven east on I-20 by plaintiff's employee when it experienced difficulty with the left rear wheel and axle. As the truck was fully loaded, it was necessary to unload the wood in order to attempt to repair it. When approximately half the wood was unloaded, a police officer instructed the employee to reload the wood because it would be dangerous to pile it on the shoulder of I-20, especially during the late afternoon peak traffic period. It was reloaded. The officer then asked headquarters to call a no-preference wrecker to tow the loaded truck. Defendant's wrecker truck was called to the scene. The wrecker driver lifted the heavily loaded rear end and began towing the truck backwards. While attempting a right-hand turn off the entrance ramp, the truck turned over and caught fire.
The trial court awarded damages for loss of the pulpwood, towing expense, repairs to the truck, and loss of earnings while the truck was being repaired.
Defendant contends on appeal that the evidence shows that defendant's wrecker driver was ordered by the police officer to tow the truck and he was simply following orders.
However, there is substantial evidence in the record to support a finding that the driver undertook the responsibility of towing the truck and that he was under no compulsion to do so. The police officer testified that he did not order the driver to tow the truck. When asked what would have happened if he had refused because it was too dangerous, the driver replied, "Somebody else would have gotten it."
Defendant also contends that plaintiff was contributorily negligent or assumed the risk in asking the wrecker driver to tow the top-heavy truck after the wrecker driver told him it was dangerous and he would not be responsible.
Plaintiff contends, on the other hand, that the evidence shows he expressed concern over the danger of the wrecker pulling the load, but the wrecker driver said he could handle it and took over responsibility.
There is substantial evidence to support the conclusion of the trial court that the wrecker driver undertook this responsibility even after plaintiff and his two employees expressed concern over his ability to tow *898 the loaded truck. The driver, who had been a tow truck driver for five years, apparently assured plaintiff of his ability and he himself testified he towed the truck even though he knew it was dangerous.
Defendant also complains about the amount of damages awarded. The accident occurred on September 1, 1977, and apparently the truck was towed by defendant to defendant's place of business. The truck was then towed by another towing service to Red River Chevrolet. However, repairs were not commenced until September 26, and not completed until October 13. Defendant contends that he should only be liable for plaintiff's loss of earnings from September 26 to October 13.
Loss of use is compensable during the period of time required for repair of the vehicle in the exercise of proper diligence. Hayes v. Allstate Insurance Co., 368 So.2d 1214 (La.App. 3rd Cir. 1979). Neither the repairman's testimony nor any other evidence explained what necessitated a 25-day delay in commencing the repair of plaintiff's truck or what, if any, efforts plaintiff made to expedite the beginning of the work. Thus, plaintiff has failed to prove these 25 days should be included within the time reasonably required for completion of repairs in the exercise of proper diligence. Accordingly, the damages for loss of use must be computed from September 26 through October 13. Fourteen work days are included in this period and plaintiff's proven loss of earnings was $70 per day.[1] Therefore, plaintiff's loss of earnings is $980.00.
We also agree with defendant's other contention that he should not be liable for loss of earnings for the period of time plaintiff's truck was under repair for damages which were not caused by the accident.
According to plaintiff's exhibit P-3, repair of the truck's left rear wheels required 17 hours. It took a total of 64.6 hours to repair the whole truck, including the rear wheels. Therefore, during 26.32% of the time the truck was under repair, the damage that was being repaired was not caused by the accident. The truck was actually under repair from September 26 through October 13, a total of 14 working days. 26.32% × 14 = 3.68 days spent on repairing the wheels. Plaintiff's loss of earnings was $70 per day. $70 × 3.68 = $257.60. Therefore, the total loss of earnings must be further reduced by this amount.
The judgment is amended to award plaintiff $722.40 for loss of earnings, and affirmed in all other respects. Costs are to be paid by appellants.
NOTES
[1] Exhibit P-2 sets forth the figures upon which plaintiff based his claim for $1800 loss of earnings. There is an error in the mathematical calculation which, if corrected, would increase the claimed loss to $70 per day, or $2100 total. An objection to the admissibility of P-2 insofar as it enlarged the pleadings was sustained and, therefore, plaintiff is limited to the $1800 set forth in Paragraph 9 of his amended petition, but under our holding the $1800 will not be exceeded.