**BIG JOHN, B.V., Plaintiff-Appellee,**

v.

**INDIAN HEAD GRAIN COMPANY, Defendant-Appellant.**

No. 83–1176

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

· Oct. 28, 1983.

Rehearing Denied Nov. 30, 1983.

---

James H. Milam, Cecil C. Kuhne, Lubbock, Tex., for defendant-appellant.

Donald M. Hunt, Lubbock, Tex., for plaintiff-appellee.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

In this diversity case, appellant Indian Head Grain Company ("Indian Head") appeals an adverse judgment holding it liable for the loss by fire of sunflower seed stored with it by Big John, B.V. ("Big John"), a Netherlands corporation. Indian Head contends that the jury's findings were based on insufficient evidence, and that the trial court erred in its exclusion of certain evidence. Thus, Indian Head urges that the judgment against it be reversed. After reviewing the record and the applicable law, we conclude that there is no error, and accordingly affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Beginning in 1976, Big John purchased sunflower seed in the United States with the help of John F. Herzer & Associates. Herzer bought the sunflower seed for Big John and arranged for storage with Indian Head until shipped to its final destination.

When setting the terms of the bailment, Indian Head offered Big John a cheaper storage rate if Big John would provide for insurance on the seed. Big John agreed to this proposal and Indian Head eliminated the cost of insurance which it would have otherwise included in its storage rate charge. In subsequent years, including the year of the fire, Big John continued to carry insurance on the seed and Indian Head made no charge for insurance. Big John's insurance policy, however, specifically stated that the benefit of the insurance would not inure to any carrier or bailee. The policy also stated that it was the duty of Big John, as the assured, to take any necessary steps to ensure that recovery actions against carriers or bailees were properly preserved and exercised.[1]

In early 1980 the sunflower seed was damaged by fire in Indian Head's grain storage tanks # 6 and # 9. Big John claimed that Indian Head's failure to inspect regularly and monitor the seed produced biological activity causing a spontaneous combustion fire in the seed. Big John brought suit against Indian Head for damage to the seed and for fire fighting expenses paid by Big John. While both

---

1. The insurance policy provided:
   9. It is the duty of the Assured and their Agents, in all cases, to take such measures as may be reasonable for the purpose of averting or minimising a loss and to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised.
   10. This insurance shall not inure to the benefit of the carrier or other bailee.

parties disputed the cause of the fire, the amount of damage caused by the fire went unchallenged.

Prior to impanelment of the jury, Big John made a motion in limine to exclude any evidence of the agreement whereby Big John agreed to carry casualty insurance on the seed being stored with Indian Head in return for a lower storage rate. Big John argued that to permit such evidence would be highly prejudicial, because the jury would be less likely to find against Indian Head if the jury learned that Big John was insured. During a pre-trial hearing on the motion, both parties testified as to the existence and terms of the alleged agreement. The district court found that there was insufficient evidence of a clear and unambiguous agreement between the parties to the effect that Big John would carry insurance that would protect Indian Head from losses resulting from Indian Head's own negligence. Thus, the court granted Big John's motion in limine and excluded any evidence of the alleged agreement from the jury's consideration.

The jury found that Indian Head's failure properly to inspect and monitor the temperature of the sunflower seed was negligence proximately causing the fire and subsequent damage. Although the jury found the damage to the seed to be $1,989,906.05 (the value of the undamaged seed), the district court granted a remittitur and rendered judgment in favor of Big John for $1,405,381.28 ($1,191,067.76 for the value of the damaged seed, plus $214,313.52 for fire expenses paid by Big John to Indian Head).

## II. EXCLUSION OF EVIDENCE CONCERNING INSURANCE.

■ Indian Head's first basis of appeal is that the district court committed prejudicial error in excluding evidence of the alleged agreement between the parties under which Big John would carry insurance on the bailed seeds in return for a lower storage rate. The admission or exclusion of evidence at trial is a matter within the discretion of the trial judge, and such evidentiary rulings will be upheld unless they constitute an abuse of discretion. *See United States*

*v. Barron,* 707 F.2d 125 (5th Cir.1983); *United States v. Shaw,* 701 F.2d 367 (5th Cir.1983); *United States v. Cochran,* 697 F.2d 600 (5th Cir.1983). We find no such abuse here. The court found that there was no clear and unambiguous agreement between the parties that Big John would carry insurance for Indian Head and, accordingly, as a matter of law Indian Head could not limit its liability. Indian Head maintains that there was specific testimony that the parties understood and intended that such insurance was to be for the benefit of both the bailor and bailee and that such an agreement precludes any action by Big John (or its subrogated insurer) against Indian Head for damage to the bailed property on the ground of negligence.

■ A bailee may by special contract limit his liability to a bailor and, so long as not contrary to public policy, the contract will be observed and enforced according to its terms. *Anchor Casualty Co. v. Robertson Transport Co.,* 389 S.W.2d 135 (Tex.Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.). An arrangement whereby a bailee contracts with a bailor to procure insurance covering the bailed property is valid and not contrary to public policy. Either the bailor or the bailee may insure, or by special contract require one of the parties to insure the bailed property for the joint benefit of both parties. Ordinarily a bailee is not liable for damage to bailed goods in his possession except for acts caused by his negligence. *Houston Aviation Products Co. v. Gulf Ports Crating Co.,* 422 S.W.2d 844 (Tex.Civ. App.—Houston 1968, writ ref'd n.r.e.). Thus, the bailee's interest in requiring the bailor to secure insurance for the bailee's benefit would be to protect the bailee from liability arising from such negligence.

■ While a bailee may contractually enlarge or restrict his liability, he may not do so by words of doubtful meaning. The intent to shift the liability must be clear. *Sanchez v. Blumberg,* 176 S.W. 904 (Tex. Civ.App.—San Antonio 1915, no writ). A provision purporting to exonerate the bailee from his negligence will be strictly construed. In determining whether such a pro-

vision operates to exempt the bailee from liability for his own negligence, "the provision must be clear and unambiguous, with a strict construction against such an intendment if any other meaning may reasonably be ascribed to the language employed." *Fowler v. One Seguin Art Center*, 617 S.W.2d 763, 765 (Tex.Civ.App.—Houston [14th District] 1981, writ ref'd n.r.e.). *See also Wichita City Lines, Inc. v. Puckett*, 156 Tex. 456, 295 S.W.2d 894 (1956). Although Indian Head did charge Big John a lower storage fee because Big John carried insurance on the seed, it is by no means clear and unambiguous from the evidence presented whether the insurance was to cover only Big John or both Big John and Indian Head.

■ Indian Head claims that the testimony of the parties established that the insurance was to be for the benefit of both parties. The record shows otherwise. The testimonial evidence indicates that the parties agreed to nothing more than that Big John would carry insurance against losses on its sunflower seed stored in Indian Head's facilities. Furthermore, as the district court noted in granting Big John's motion in limine, Robert Johnson, manager and principal operating officer of Indian Head, testified that "if a loss was [Indian Head's] fault, I did not expect [Big John] to cover it." This testimony clearly indicates that Indian Head did not contemplate or intend that the insurance taken out by Big John would protect Indian Head from losses caused by its negligence. We agree with the district court that the mere agreement Big John would procure insurance rather than pay for it through Indian Head fails adequately to advise the bailor of the risk the bailee is attempting to shift and is inadequate as a matter of law to limit the bailee's liability for his own negligence. Thus, the court properly exercised its discretion and excluded this evidence from the jury.

■ Indian Head also contends that evidence of the agreement was admissible to establish that Big John's casualty insurers were the real parties in interest. Under Fed.R.Civ.P. 17(a), if the insurer has paid the entire claim of the insured, it is the real party in interest and must sue in its own name. *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); *City Stores Co. v. Lerner Shops of District of Columbia, Inc.*, 410 F.2d 1010 (D.C.Cir.1969). Rule 17(a), however, also provides that formal joinder or substitution of the real party in interest will not be necessary when he ratifies commencement of the action. *Urrutia Aviation Enterprises, Inc. v. B.B. Burson & Assoc., Inc.*, 406 F.2d 769 (5th Cir.1969). In this case Big John's insurers ratified the action which their counsel took in the name of Big John and Indian Head was aware that Big John's insurers were suing in the insured's name.

## III. CHALLENGES TO JURY FINDINGS AND AWARD.

### A. Sufficiency of the Evidence.

■ At the conclusion of all the evidence, the district court submitted the case to the jury on two issues of negligence: (1) whether Indian Head failed to inspect regularly and monitor the temperature of the sunflower seed in its grain storage tanks # 6 and # 9; and (2) whether Indian Head failed to take corrective actions to prevent the fire in question. The jury answered affirmatively to both issues, and found further that the fire and damage was proximately caused by Indian Head's negligence.

Indian Head contends that the evidence was insufficient to support these findings and that the district court should have granted its motion for a directed verdict. It is Indian Head's position that the only probative evidence with respect to these issues established that Indian Head did in fact regularly inspect and monitor the temperature of the sunflower seed in the tanks and did take corrective actions to prevent the fire in question. This view of the evidence is not supported by the record. Indian Head's general manager admitted that he believed the fire resulted from spontaneous combustion. That combustion, as the manager and experts who testified at

the trial agreed, could result when moisture and temperature combine to induce bacterial activity, which in turn produces heat and moisture, further biological activity and increasing heat until ignition. These parties also testified that the process culminating in spontaneous combustion can be detected and corrected. While Indian Head produced some evidence of inspections, its general manager admitted that they were irregular and that he did not know when the last inspection took place before the fire.

On a motion for directed verdict if there is substantial evidence opposed to the motion such that reasonable men might reach different conclusions, the motion should be denied, and the case submitted to the jury. *Boeing Company v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969). Because the evidence presented in this case raised questions of whether Indian Head failed regularly to inspect the seed and to take corrective measures, the jury was free to conclude that Indian Head was negligent and that its negligence was the proximate cause of Big John's loss. We will not disturb this finding in light of the fact that it is supported by an evidentiary basis.

### B. *Damages Chart Sent to the Jury Room.*

Indian Head next asserts prejudicial error by the district court in permitting Big John to use a chart showing calculation of losses during argument to the jury and in permitting this chart to be sent to the jury room. To decide this issue, Indian Head contends that, in a diversity case, the determination of materials that can properly be taken into the jury room is governed by state law. In support, Indian Head cites *Shane v. Warner Manufacturing Corp.,* 229 F.2d 207, 210 (3d Cir.), *cert. dismissed,* 351 U.S. 959, 76 S.Ct. 860, 100 L.Ed. 1481 (1956), but that case is inapposite. Instead, the *Shane* court held that a damages calculation

chart may be used and submitted to a jury with careful instructions as to its use. After so holding, the court noted that the law of the forum state was, incidentally, identical.

▉ It is clear, contrary to Indian Head's contention, that in a diversity case federal law defines the extent to which material may be used and submitted to a jury. As we said in *Pass v. Firestone Tire & Rubber Co.,* 242 F.2d 914, 919 (5th Cir. 1957): "Whatever may be the [state] rule limiting matter which may be taken out by the jury when it retires to deliberate, we consider any such rule purely procedural and not binding upon a federal court, even in the trial of a diversity case." [2]

▉ Indian Head asserts that the damages calculation chart should not have been used by Big John during its argument to the jury. Yet at the time Indian Head failed to object to its use. Since this issue was not raised in the district court, it will not be considered on appeal unless we find plain error resulting in a miscarriage of justice. *See* Fed.R.Civ.P. 46; *In the Matter of First Colonial Corporation of America,* 693 F.2d 447, 449–50 n. 5 (5th Cir.1982); *In re Novack,* 639 F.2d 1274 (5th Cir.1981).

▉ Indian Head also asserts that because the chart was not introduced into evidence, the jury should not have been permitted to use it during deliberations. The submission of materials "whether or not admitted in evidence, to the jury during deliberations, accompanied by careful cautionary instructions as to their use and limited significance, is within the discretion accorded the district court in order that it may guide and assist the jury in understanding the factual controversy." *United States v. Downen,* 496 F.2d 314, 321 (10th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). *See also Federal*

---

**2.** As noted by the court in *Caton v. Hardamon,* 496 F.2d 6, 8 (7th Cir.1974):

Sending items to the jury room is "merely a form and mode of enforcing" the rights of the parties. See *Byrd v. Blue Ridge Rural Electric Corp., Inc.,* 356 U.S. 525, 536, 78 S.Ct.

893, 900, 2 L.Ed.2d 953. It is hard to imagine any issue more procedural than the one here. * * * Consequently, state practice is not relevant to what a federal court may send to the jury room.

*Aviation Administration v. Landy,* 705 F.2d 624, 633 (2d Cir.1983); *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1315 (5th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978); *Shane v. Warner Manufacturing Corp.,* 229 F.2d 207, 210 (3d Cir.), *cert. dismissed,* 351 U.S. 959, 76 S.Ct. 860, 100 L.Ed. 1481 (1956).

In *Downen, supra,* the appellants argued that the district court erred in allowing a blackboard chart prepared by the government, summarizing its theory of the case, to be sent to the jury room during deliberations. They argued that the chart had not been admitted into evidence and that its use was extremely prejudicial. The court held that nothing contained on the chart could have prejudicially influenced the jury's verdict, in light of the careful and detailed cautionary instructions given by the district court that it was not evidence and was merely being permitted to be shown to the jury in order to clarify a complex factual situation. In the case at bar, the court instructed the jury that the chart was only jury argument and not evidence, which it followed with the instruction that the jury should rely on the exhibits introduced into evidence.[3] Furthermore, Indian Head did not at trial and does not now contest the accuracy of the calculation of damages on the chart or the underlying evidence on which the calculations were based.

Indian Head avers that the case of *Stiles v. Lawrie,* 211 F.2d 188 (6th Cir.1954), supports a finding of error in this case. In *Stiles* the court reversed the judgment of the district court and ordered a new trial based upon the receipt and consideration by the jury during its deliberations of a highway manual that had not been introduced in evidence. What Indian Head fails to note, however, is that in *Stiles,* the material was brought into the jury room by one of the members of the jury rather than sent in

by the court with appropriate limiting instructions. Thus, we find the district court did not abuse its discretion in allowing the jury to use this chart during its deliberations.

*C. Denial of Jury Interviews.*

Indian Head also submits that a new trial should be granted because of the district court's refusal to allow Indian Head to contact and interview the jurors subsequent to trial to elicit evidence of jury misconduct. Indian Head contends that Rule 8.2(d) of the Local Rules of Practice for the United States District Court for the Northern District of Texas, which provides that a party, attorney, or representative of either shall not contact any juror except upon explicit leave of court, violates the First Amendment of the United States Constitution under the recent decision of this court in *In re Express-News Corp.,* 695 F.2d 807 (5th Cir.1982). *In re Express-News Corp.* held a similar rule unconstitutional when applied to prevent the media from gathering news by interviewing jurors. We carefully distinguished, however, post-verdict juror interviews designed to obtain evidence of alleged improprieties during the jury's deliberations. *Id.* at 810. *See also Wilkerson v. Amco Corp.,* 703 F.2d 184, 186 n. 2 (5th Cir.1983). Thus, this constitutional challenge has no merit.

Indian Head also asserts that Fed. R.Evid. 606(b) provides support for its request to interview jurors. Rule 606(b) states that a juror "may not testify as to any matter or statement occurring during the course of the jury's deliberations ... except that a juror may testify on the question whether extraneous prejudicial information was brought to the jury's attention...." Indian Head argues that the jury's improper consideration of the damages chart and the "grossly excessive" ver-

---

**3.** The district court instructed the jury that:

This chart ... may be taken into the jury room, but I want to tell you now that the chart is not the evidence. The evidence in the case comes from these exhibits, and you will treat the chart just as you would treat the argument. I am not saying that you

could not see it, but I wanted to caution you that the exhibit, itself, is the evidence. But I think it will aid the jury in at least finding and going to the direct exhibit that is in evidence and examining that, so I will permit it for those limited purposes.

dict constitute grounds for granting Indian Head's motion to interview jurors with regard to prejudice from the "improperly admitted and considered chart" and "any other matters" which may have been improperly considered by the jury during deliberations.

As we observed in *Wilkerson, supra,* this circuit historically has required a showing of "specific instances of misconduct" before allowing interrogation of jurors. 703 F.2d at 185. In *Wilkerson* we reviewed

> "the very cogent reasons" for requiring parties to make a showing of likely misconduct before allowing such an inquiry: protecting the jury from post-verdict misconduct and the courts from time-consuming and futile proceedings; reducing the "chances and temptations" from tampering with the jury; and increasing the certainty of civil verdicts.... We continue to decline to "denigrate jury trials by afterwards ransacking the jurors in search of some ground ... for a new trial" unless some preliminary showing is made.

703 F.2d at 185–86.

Indian Head has failed to make any preliminary showing of misconduct. We have already determined that the damages chart was not prejudicial as it was an uncontested summary of damages accompanied by proper limiting instructions as to its use. The motion to interview jurors as to other matters which may have been brought before the jury was merely, as Indian Head admitted, a "fishing expedition" in the hope of impeaching the verdict. We hold, therefore, that the court below properly denied Indian Head's request to interview members of the jury.

### D. *Remittitur of Damages Award.*

■ In response to the special issue inquiring as to the damage to the sunflower seed, the jury awarded $1,989,906.05. The amount of loss from damaged seed, however, was not in dispute and was stipulated to be $1,191,067.76. Indian Head avers that the jury's award of almost $800,000 more than the actual loss reflects "prejudice and

passion" on the part of the jury and for this reason the entire verdict should be set aside and a new trial granted.

The "CALCULATION OF LOSSES" chart sent to the jury room shows how this finding could have occurred. The jury answer of $1,989,906.05 to the seed damage special issue was the value of the undamaged seed, rather than $1,191,067.76, the value of the damaged seed. As shown below by an excerpt of the chart, the greater figure of $1,989,906.05 was listed on the line immediately above the seed damage figure of $1,191,067.76:

CALCULATION OF LOSSES

. . .

| | |
|---|---|
| VALUE OF ORIGINAL SEED | $3,520,763.62 |
| VALUE REMAINING AFTER FIRE (SALVAGE) | ( 339,789.81) |
| UNDAMAGED SEED PLUS SHRINKAGE | (1,989,906.05) |
| LOSS ON SEED | 1,191,067.76 |
| FIRE FIGHTING & SALVAGE | 214,313.52 |
| TOTAL LOSS | $1,405,381.28 |

The court granted Big John's request for remittitur after reasoning that the jury merely took the figure "off the wrong line" of the chart. Since the label identifying "LOSS ON SEED" appeared on the opposite side of the chart, it does appear that the eye could easily "line up" the larger number opposite the identifying "LOSS ON SEED." The trial court entered judgment, therefore, for the $1,191,067.76 seed damage amount and $214,313.52 fire fighting expense, for a total judgment of $1,405,381.28.

Recognized remittitur principles support the action of the court below. A remittitur should be awarded when the jury has made a clear oversight and the correction is mechanical. *Shingleton v. Armor Velvet Corp.,* 621 F.2d 180, 182 (5th Cir.1980); *Stapleton v. Kawasaki Heavy Industries, Ltd.,* 608 F.2d 571, 574 n. 7 (5th Cir.1979). Because the district court did not find the verdict to have resulted from passion or prejudice, and because there is ample reason to believe that the error was patent and the correction mechanical, no new trial is called for.

■ Finally, Indian Head argues that the judgment should be modified to eliminate the amount of $214,313.52 for

firefighting expenses. Indian Head contends that such expenses were voluntarily paid by Big John to Indian Head, and that it is well settled under Texas law that money voluntarily paid cannot be recovered. However, evidence was introduced by Big John to show this payment was not voluntary. Furthermore, Indian Head's manager testified that the salvaged seed would not be released until the firefighting expense was paid by Big John. More critically, however, Indian Head failed either to request any issue on voluntariness or object to the failure to submit any such issue to the jury. Absent such request or objection, Fed.R.Civ.P. 49(a)[4] deems the disputed issue in support of the verdict and judgment. *Ogden Food Service Corp. v. Mitchell,* 614 F.2d 1001, 1003 (5th Cir.1980); *Hyde v. Land-of-Sky Regional Council,* 572 F.2d 988, 992 (4th Cir.1978).

Therefore, because Indian Head has failed to show any error, the judgment of the district court is AFFIRMED.

---

4. The relevant part of Rule 49(a) reads as follows:

> If ... the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.