764 F.2d 1084
 19 Fed. R. Evid. Serv. 576
 In re AIR CRASH DISASTER NEAR NEW ORLEANS, LA. ON JULY 9, 1982.
Darryl TURGEAU and Dolores V. Turgeau, Plaintiffs-Appellees,
v.
PAN AMERICAN WORLD AIRWAYS, INC., United States Aviation
Underwriters, Incorporated and the Boeing Company,
Defendants-Appellants.
 No. 84-3345.
 United States Court of Appeals,
Fifth Circuit.
 June 26, 1985.
 
 Deutsch, Kerrigan & Stiles, Darrell K. Cherry, Francis G. Weller, New Orleans, La., for Pan American Airways, Inc.
 Redmann & Fonte, Kenneth C. Fonte, Harahan, La., Blue, Williams & Buckley, Robert F. Spangenberg, IV, Metairie, La., for plaintiff-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, TATE and DAVIS, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 This is another of the 300-odd cases arising out of the July 9, 1982 crash of Pan American World Airways Flight 759 in Kenner, Louisiana. Darryl and Dolores Turgeau owned a home at 1713 Taylor Street in Kenner, approximately 100 feet from the point where the plane struck the ground. Mrs. Turgeau was in the home with their son, George, on the afternoon of July 9. On hearing the crash, Mrs. Turgeau looked out her front door to see the Boeing 727 sliding into the house across the street. She and George immediately fled the neighborhood and went to her mother's home. Meanwhile, Darryl Turgeau heard of the crash while working in River Ridge, Louisiana. When a call to the home went unanswered, he drove to the crash site and made his way to his house, which had sustained no immediately obvious damage. Finding no one home, Turgeau hurried to the Kenner City Hall where he telephoned his mother and discovered that his family was safe.
 
 
 2
 The Turgeau home was covered with jet fuel in the crash, and four days later Kenner authorities determined that it was unsafe for human habitation. A few hours later, as Turgeau watched, the house was leveled by a bulldozer.
 
 
 3
 This action against Pan Am sought recovery for property damage, past and future mental pain and anguish, and living expenses following the crash. The jury awarded the Turgeaus the following sums:
 
 
 4
 Property damage for loss of home $50,000
 
 Darryl Turgeau's mental pain and
 
 5
 anguish 10,000
 
 Dolores Turgeau's mental pain and
 
 6
 anguish 60,000
 
 Living expenses for a reasonable
 
 7
 period after the destruction of the
 
 
 8
 house $10,000
 
 
 9
 After judgment was entered, Pan Am moved for JNOV, a new trial, and in the alternative, for a remittitur. These motions were denied.
 
 
 10
 In this appeal, Pan Am urges numerous grounds for reversal: (1) the award of damages for mental anguish to Darryl Turgeau is both contrary to Louisiana law and unsupported by the evidence; (2) the award of damages for mental anguish to Dolores Turgeau is unsupported by the evidence; (3) the district judge improperly permitted the plaintiff to put on witnesses who were not listed in the pretrial order; (4) the district judge abused his discretion by failing to grant a mistrial after a witness gratuitously testified concerning the amount of his property settlement with Pan Am; (5) the award of $10,000 for living expenses is unsupported by the evidence; (6) the district judge failed to instruct the jury on superceding and intervening cause; and (7) the district judge abused his discretion in denying Pan Am's motion for a change of venue.
 
 I. THE MENTAL ANGUISH AWARDS
 
 11
 We again apply the substantive law of Louisiana. That substantive law allows a plaintiff to recover for "fright, fear, or mental anguish" sustained while an ordeal is in progress, regardless whether the plaintiff is physically injured.[1] Louisiana does not, however, allow recovery for mental anguish occasioned by another's injury or suffering.[2] The sole exceptions to the rule precluding recovery for mental anguish resulting from another's injuries are in cases of wrongful death and cases in which the anguish is in fact caused by the breach of a "primary and independent legal or contractual duty which is owed directly to the aggrieved plaintiff."[3]
 
 
 12
 Louisiana law also allows a plaintiff to recover for mental anguish suffered as a result of damage to property, but only in limited circumstances: (1) when property is damaged by an intentional or illegal act; (2) when property is damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) when property is damaged by acts constituting a continuing nuisance; or (4) when property is damaged when the owner is either present or nearby and suffered a psychic trauma as a direct result.[4] "[T]he mental anguish must be a real mental injury. The usual worry over the consequences of property damage (where a plaintiff suffers no direct mental injury from the negligent act) will not justify an award for mental anguish damages."[5] Finally, a strong showing of causation is required. As stated in Elston v. Valley Electric Membership Corp.:
 
 
 13
 Due to the highly subjective nature of mental anguish claims and their susceptibility to fabrication or exaggeration, our courts developed these criteria to limit recovery to cases where both the mental injury and the causal relation to the property damage are clearly established. Furthermore we note that the cases in which recovery was denied on the ground that plaintiff was not physically present when the property damage occurred emphasized that absent the circumstance of his presence, the plaintiff could not show that the anguish he suffered was directly caused by the accident.
 
 
 14
 381 So.2d at 556.
 
 
 15
 Pan Am makes the two-pronged argument that Darryl Turgeau does not fall into any of the categories in which recovery is allowed, and that in any case he did not sustain the level of mental anguish necessary to allow recovery. This second contention is based on the fact that Turgeau has undergone no treatment for his alleged mental injury and did not consult a psychiatrist until requested to do so by his lawyer some sixteen months following the crash. In short, Pan Am argues that the evidence shows nothing more than the usual worry over the consequences of property damage.
 
 
 16
 Turgeau defends the damage award by contending that the "ordeal" of the crash continued through the several days of rescue and clean-up efforts, and culminated in his witnessing the destruction of his home. Turgeau also argues, based on Elston v. Valley Electric Membership Corp., that he need not have been present when the crash occurred in order to recover, so long as he showed that the anguish he suffered was directly caused by the crash. Finally, he argues that the psychiatrist's testimony established that he suffered from a post-traumatic stress syndrome brought about by this ordeal.
 
 
 17
 The only basis on which Turgeau might recover damages for his mental distress is that he was present at the destruction of his home. Turgeau's experience in the aftermath of the crash was without doubt a disturbing one, but we can find no basis in Louisiana law to allow recovery for distress caused by this experience. In Tudela v. Pan American World Airways, slip op. 5390, 764 F.2d 1082 (5th Cir.1985), our companion decision of this date, we held that an individual who was simply exposed to the results of the crash, without sustaining any physical injury or property damage, and who was not in any danger from the accident, could not recover for mental anguish under Louisiana law. Mr. Turgeau's experience in the aftermath of the crash was essentially the same as that of the plaintiff in Tudela, differing only in that Mr. Tudela knew that his family was safe. This distinction is of no significance, since clearly Mr. Turgeau's concern over his family's safety cannot furnish a basis for recovery.
 
 
 18
 With regard to the claim for distress resulting from the destruction of his home, we agree with Turgeau that his presence or lack of presence at his home at the time of the crash is of no consequence. Because by all accounts the house was at least superficially undamaged following the crash, obviously no damages could have been awarded to Turgeau for any mental anguish resulting from property damage at that time. Any mental anguish for which Turgeau can recover must flow from his witnessing the destruction of his home by the City of Kenner four days after the crash.
 
 
 19
 This issue is complicated by the fact that Turgeau's claim presents a variety of factual situations not present in the Louisiana cases. The Louisiana decisions which have allowed recovery for mental anguish when property was damaged in the owner's presence typically involve situations in which the damage was sudden, the realization of damage on the part of the owner equally sudden, and the mental distress clearly caused by the property damage.[6] Here, by contrast, the owner's property was at least superficially undamaged following the tort, he was forewarned that his home would be destroyed, and he chose to be present at that time. Most critically, the peculiar circumstances of this case, and the particular evidence presented, leave the issue of causation extremely murky.
 
 
 20
 Turgeau's psychiatrist, Dr. Sanders, testified that Turgeau was suffering from a post-traumatic stress condition brought on by his fear for his family's safety following the crash. Dr. Sanders also testified that the loss of his house caused Turgeau some "sadness and feelings," and that he felt a sense of loss over the house.[7] Dr. Sanders did not indicate to what extent the loss of the home contributed to Turgeau's post-traumatic stress disorder, and in fact Turgeau himself did not link the loss of the house itself with his continuing anxiety.
 
 
 21
 As noted above, Louisiana law requires a strong showing of causation in order to recover for mental anguish for damage to an individual's property. The jury might have inferred from Dr. Sanders' testimony that the destruction of the house contributed in some degree to Turgeau's mental disorder, but this testimony gave the jury no basis at all on which to infer what part of this disorder was attributable to the loss of the house. This is particularly so since, as is evident from Dr. Sanders' testimony and Turgeau's own testimony, the overriding cause of Turgeau's distress was his concern for his family. We therefore conclude that this strong showing of causation required for recovery for this item of damages in this situation has not been met, and therefore reverse the award of damages for mental anguish.
 
 
 22
 Pan Am concedes that Dolores Turgeau may recover for any trauma she sustained, because she was present and quite reasonably believed herself to be in danger at the time of the crash. It urges, however, that the evidence was insufficient to support a finding that Mrs. Turgeau sustained any compensable trauma, because--like Mr. Turgeau--she required no medication, no continuing treatment, and did not consult a psychiatrist until requested to do so by her attorney. While all of this may be true, the unrebutted testimony of the plaintiff's psychiatrist was that Mrs. Turgeau suffered from a post-traumatic stress disorder which caused her considerable mental disruption, and would continue to cause this disruption at intervals throughout her life. This formed a sufficient basis for the jury's award of damages.
 
 
 23
 In the alternative, Pan Am charges that the $60,000 award to Mrs. Turgeau is so excessive that it must be reduced. Pan Am cites a number of cases from the Louisiana courts in which considerably smaller sums have been awarded for injuries exhibiting more marked immediate symptoms.[8] Our research has not disclosed any Louisiana damage awards for pure mental anguish which approach the one made in this case. This does not, however, mean that Mrs. Turgeau's award may not stand. This issue has been explored in detail by past decisions of this court, and it will suffice here to note that a jury's award is safe from appellate tinkering unless it is so large as to "shock the judicial conscience" or to be "entirely disproportionate to the injury sustained." Caldarera v. Eastern Air Lines, Inc., 705 F.2d 778, 783-84 (5th Cir.1983). In addition, we assume for purposes of this opinion that in a diversity case we may not affirm an award which could not be affirmed by the highest court of the state whose law we are applying.[9] The Louisiana standard for review for determining whether a verdict is excessive is, if anything, at least as deferential toward the trier of fact as the federal standard quoted above--the award must be "a clear abuse of the trier of fact's much discretion." See Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Although this award is considerably larger than any yet reported in Louisiana, we do not find it shocking, nor do we believe that it is an abuse of the trier of fact's considerable discretion. The cases relied upon by Pan Am, although involving mental injuries which showed more marked immediate symptoms than Mrs. Turgeau's, do not appear to have involved permanent impairments. We therefore do not find that, in the circumstances presented by this record, this award was outside the area of the jury's discretion.
 
 II. EVIDENTIARY RULINGS
 
 24
 Over Pan Am's objection, Turgeau was allowed to put on as witnesses the owners of several houses located immediately outside the crash site. These witnesses testified in rebuttal to the testimony and report of Pan Am's expert, Dr. Hadala, who had testified that there was very little possibility of damage to homes as far from the crash site as the Turgeau's. The district court allowed these witnesses to testify despite their omission from the pretrial order because Dr. Hadala had submitted a second, somewhat expanded report after the court's pretrial deadline for submission of expert reports had passed. Pan Am contends that this report, which only refined the conclusions reached in Dr. Hadala's original report, certainly did not warrant allowing additional witnesses in rebuttal.
 
 
 25
 We review evidentiary rulings only to determine if there has been an abuse of discretion. E.g., Big John, B.V. v. Indian Head Grain Co., 718 F.2d 143, 146 (5th Cir.1983). Pan Am's contention appears to be substantially correct, but since the expanded report contained additional material not included in the original report, the district judge's decision to allow use of those witnesses was not an abuse of discretion.
 
 
 26
 Likewise, we conclude that the district judge did not abuse his discretion in refusing to grant Pan Am's motion for mistrial after one of these witnesses testified as follows:
 
 
 27
 Q: And wasn't the engineer's opinion that there was no interior damage to your home as a result of the crash? Isn't that a fact?
 
 
 28
 A: No sir. They paid me $92,618 for the damage.
 
 
 29
 Although unresponsive and unnecessary, this answer did not require that a mistrial be declared. The district judge instructed the jury to disregard the answer, and he is in a better position to evaluate the effect of such an answer on the jury than we.III. AWARD OF DAMAGES FOR LIVING EXPENSES
 
 
 30
 Following the destruction of their home, the Turgeaus rented a house in Kenner for $625 per month. Pan Am paid this rent for the first seven months; the Turgeaus paid the rent for each of the twelve months from that date until the time of trial. Pan Am argues that under Louisiana law the plaintiff has the duty to exercise due diligence to secure some replacement for the property lost as the result of defendant's conduct. Because the Turgeaus have advanced no reason why they could not have procured another home within a year and a half of the crash, Pan Am concludes that the $10,000 award must be reduced or reversed altogether. Turgeau, on the other hand, argues that Louisiana law places the burden on the defendant to prove any amounts which should be considered in mitigation of damages.[10]
 
 
 31
 After examining the cases cited by the parties and various other authorities, we conclude that Pan Am has the best of the argument. Although the burden is on the defendant to prove the amount to be considered in mitigation, Louisiana requires that an injured person exercise the diligence and care of a man of ordinary prudence to minimize his damages.[11] "What constitutes reasonable care depends upon the circumstances of the particular case, taking into consideration time, knowledge, opportunity, and expense."[12] In this case the Turgeaus have produced no evidence to show that they exercised due diligence in attempting to locate a new house.[13] On the other hand, Pan Am introduced no evidence to affirmatively support its contention that the Turgeaus should have located a new house within seven months of the crash. This leaves us to attempt to reconcile the opposing legal principles on which the parties rely.
 
 
 32
 A number of Louisiana cases, typically involving claims for rental charges or loss of use while an automobile damaged by the defendant's conduct is being repaired, illustrate the Louisiana courts' approach to the mitigation problem in an analogous situation.[14] When the plaintiff has not produced any evidence that an apparently excessive length of time for repairs is in fact reasonable, or has made no efforts to insure that repairs are completed in a reasonable time, the Louisiana courts will reduce the award to the amount of time during which repairs could have been completed with reasonable diligence.[15] In the circumstances of this case, we agree with Pan Am that seven months, the period of time Pan Am paid the Turgeaus' rent, was a reasonable period for the Turgeaus to locate a new house. The award of $10,000 for living expenses must therefore be reversed.
 
 IV. FAILURE TO INSTRUCT ON INTERVENING CAUSE
 
 33
 Pan Am contends that the district judge erred in failing to instruct the jury regarding superceding or intervening cause, on the theory that the City of Kenner's allegedly negligent act in demolishing the house absolves Pan Am of any liability. Under Louisiana law, in some circumstances an intervening act of negligence may suffice to relieve the original wrongdoer of liability. See, e.g., Titard v. Lumbermen's Mutual Casualty Co., 282 So.2d 474, 477-78 (La.1973). Although the district judge might have permissibly instructed the jury on these matters, his decision not to do so was not an abuse of discretion. The jury was instructed that if it found that the destruction of the Turgeau home by the City of Kenner was the "result" of the crash, Pan Am could be held liable. Counsel for Pan Am vigorously argued to the jury that the destruction of the house was the result of the City of Kenner's actions, not the crash.
 
 
 34
 Under Louisiana law, for a defendant to be held liable in tort, its wrongful conduct "must first be found to have been a cause in fact of the resulting harm.... Defendant's conduct must be a necessary antecedent of plaintiff's harm but it need not be the sole cause contributing to the harm.... If the plaintiff can show that he probably would not have suffered injury absent defendant's conduct, he has carried his burden of proof relative to cause in fact." Straley v. Calongne Drayage and Storage, Inc., 346 So.2d 171, 175 (La.1977).
 
 
 35
 The evidence in the record before us was more than sufficient to support a conclusion that without the crash of Flight 759, the Turgeaus' home would not have been demolished. An instruction on superseding causes was therefore unnecessary.
 
 
 36
 Finally, Pan Am contends that a change of venue should have been granted because of pretrial publicity regarding large verdicts awarded in the Eastern District of Louisiana. Pan Am has not produced any argument or cited any facts which indicate that this is the case; we therefore reject this assignment of error.
 
 CONCLUSION
 
 37
 To the extent the judgment of the district court awards damages for Darryl Turgeau's mental pain and anguish and for living expenses following the crash, it is REVERSED. The judgment of the district court is in all other respects AFFIRMED.
 
 
 
 [1]
 E.g., Carroll v. State Farm Ins. Co., 427 So.2d 24, 26 (La.App. 3d Cir.1983); Butler v. Pardue, 415 So.2d 249, 252 (La.App. 2d Cir.1982); Chappetta v. Bowman Transportation, Inc., 415 So.2d 1019, 1022 (La.App. 4th Cir.1982); Hoffman v. All Star Ins. Corp., 288 So.2d 388, 394 (La.App. 4th Cir.1974)
 
 
 [2]
 LeConte v. Pan American World Airways, Inc., 736 F.2d 1019, 1020 (5th Cir.1984); Blackwell v. Oser, 436 So.2d 1293 (La.App. 4th Cir.1983), writ denied, 442 So.2d 453 (La.1983); Young v. South Central Bell Telephone Co., 412 So.2d 147 (La.App. 4th Cir.1982); See generally Stone, "Louisiana Tort Doctrine: Emotional Distress Occasioned By Another's Peril, 48 Tul.L.Rev. 782 (1974)
 
 
 [3]
 LeConte, 736 F.2d at 1020; Spencer v. Terebelo, 373 So.2d 200, 202 (La.App. 4th Cir.); writ denied, 376 So.2d 960 (La.1979)
 
 
 [4]
 E.g., Meshell v. Insurance Company of North America, 416 So.2d 1383, 1387 (La.App. 3d Cir.1982); Dugas v. St. Martin Parish Police Jury, 351 So.2d 271, 276 (La.App. 3d Cir.1977), writ denied, 358 So.2d 1046 (La.1978); Elston v. Valley Electric Membership Corp., 381 So.2d 554, 556 (La.App. 2d Cir.1980); Farr v. Johnson, 308 So.2d 884 (La.App. 2d Cir.1975)
 
 
 [5]
 Elston, 381 So.2d at 556
 
 
 [6]
 See e.g. Hymel v. Tom Alexander Brokerage Co., 348 So.2d 104, 106 (La.App. 4th Cir.), writ denied, 350 So.2d 894 (La.1977); Speight v. Southern Farm Bureau Ins. Co., 254 So.2d 485, 489 (La.App. 3d Cir.1971)
 
 
 [7]
 Dr. Sanders' testimony concerning the effect of the destruction of the home on Turgeau follows:
 Q In obtaining the psychiatric history from Mr. Turgeau, did he discuss with you any anxieties that were connected with respect to the loss of his residence and his being placed into a rental home?
 A Yes. He told me that there was a lot of sadness and feelings when he was watching his home being destroyed. Also, he found that losing the house was not as upsetting as the actual plane crash itself and all the worry about his family. But, it did have an effect on him because it was a lot of memories there he lost that he felt he couldn't regain. Like things he'd done to fix up his house special for the kids; this sort of thing. He felt like those were gone. He was upset about being in a rented home because he couldn't fix it up like he wanted to. He wanted to get into his own home again so he could start working on it, doing things to make it special for his children; and he couldn't do that.
 
 
 [8]
 E.g., Mayer v. McNair Transport, Inc., 384 So.2d 525, 527 (La.App. 2d Cir.1980) (plaintiff suffered severe attacks of hyperventilation for nine months following the accident plus general state of depression--$18,500 awarded); Hymel v. Tom Alexander Brokerage Co., 348 So.2d 104, 106 (La.App. 4th Cir.1977) (seventy-eight-year old woman became disoriented and went into state of depression after her home was damaged--$5,000 awarded); Carroll v. State Farm Insurance Co., 427 So.2d 24 (La.App. 3d Cir.1983) (plaintiff became hysterical, exhibited symptoms for five months--$7,500 awarded)
 
 
 [9]
 See Lowe v. General Motors Corp., 624 F.2d 1373, 1383 (5th Cir.1980); Hysell v. Iowa Public Service Co., 559 F.2d 468, 472 (8th Cir.1977); Ouachita National Bank v. Tosco Corp., 686 F.2d 1291, 1297 (8th Cir.1982), rev'd on other grounds, 716 F.2d 485 (8th Cir.1983) (en banc); Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 750 (2d Cir.1984)
 
 
 [10]
 E.g., Reeves v. Travelers Insurance Co., 329 So.2d 876, 878 (La.App. 2d Cir.1976); Desselle v. Wilson, 200 So.2d 693, 697 (La.App. 3d Cir.1967)
 
 
 [11]
 Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823, 825-26 (1968); Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064, 1071 (La.App. 1st Cir.); writ denied, 433 So.2d 1056 (La.1983)
 
 
 [12]
 Unverzagt, 215 So.2d at 825-26
 
 
 [13]
 The only testimony on this subject was Mr. Turgeau's:
 Q. Have you purchased another home since the air crash?
 A. No.
 Q. Have you signed any agreements to purchase another house since the air crash?
 A. No.
 Q. Have you been looking for another home since the air crash?
 A. We have visited an area, my wife and I.
 Q. What area?
 A. Ponchatoula.
 Q. Why Ponchatoula?
 A. Because it is beautiful and serene. It is quiet. It's away from all the planes and noise and fear.
 
 
 [14]
 Russell v. Lloyd's Towing Service, Inc., 381 So.2d 896, 898 (La.App. 2d Cir.1980); Hayes v. Allstate Insurance Co., 368 So.2d 1214, 1216 (La.App. 4th Cir.1979); Blum v. Allstate Insurance Co., 351 So.2d 283, 284 (La.App. 3d Cir.1977)
 
 
 [15]
 E.g., Carroll v. State Farm Ins. Co., 427 So.2d 24, 26-27 (La.App. 3d Cir.1983); Russell v. Lloyd's Towing Service, Inc., 381 So.2d at 898; Carimi v. Saia, 301 So.2d 895, 896 (La.App. 4th Cir.1974); see also Noland v. Liberty Mutual Insurance Co., 96 So.2d 360, 362 (La.App. 1st Cir.1957)