**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Eugene DOWNEN, and Keith Paul
Smith, Defendants-Appellants.**

**Nos. 73–1974, 73–1975.**

United States Court of Appeals,
Tenth Circuit.

April 23, 1974.

As Amended on Denial of Rehearing
May 22, 1974.

316

Robert J. Roth, U. S. Atty., E. Edward Johnson, Richard L. Meyer, Asst. U. S. Attys., Topeka, Kan., for appellee.

Thomas C. McKee, Denver, Colo., for appellants.

Before HILL, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Larry Eugene Downen and Keith Paul Smith appeal from sentences imposed following jury verdicts of guilty. Downen and Smith were indicted on charges involving transportation of stolen pickup trucks in interstate commerce, concealment and sale of stolen pickup trucks, and conspiracy to commit these offenses, in violation of 18 U.S.C.A. §§ 2, 371, 2312 and 2313. Downen was found guilty on all five counts with which he was charged, i. e., Counts 1, 5, 6, 8 and 9. Smith was found guilty on 8 of the 9 counts with which he was charged, i. e., Counts 1, 2, 3, 4, 5, 6, 8 and 9.

On appeal the appellants claim trial court error: (1) in denying their Motions for Judgment of Aquittal as to Counts 1, 5, 6 and 8, wherein they alleged lack of substantial evidence to support the verdicts of guilty; (2) in allowing a blackboard chart exhibit to remain before the jury during trial, and to be sent to the jury room during deliberations; and (3) in giving Instruction 30 which they allege to be inconsistent with their right to be proved guilty beyond a reasonable doubt.

The trial lasted eight days. Some thirty-eight witnesses testified. Approximately 51 exhibits were admitted in evidence. Counts 1, 5, 6 and 8 are

the only counts resulting in convictions challenged on appeal. We shall endeavor to set forth a factual summary of each of the four counts involved in this appeal.

Count 1 involved a brown and white 1968 Chevrolet pickup truck stolen in Roeland Park, Kansas, in October, 1971, owned by a Mr. David Steinle. Its vehicle identification number (hereinafter referred to as VIN) was CE148J143119. Thereafter the vehicle was traded at Ft. Smith, Arkansas, by a man named Keith Paul Smith, whose name was on the title, to one Gary Goodwin, who testified that he knew both Downen and Smith. The vehicle, when traded, bore a different VIN. Ann Fox, formerly married to Downen, testified that she spoke with him before the Steinle vehicle had been stolen and that he stated that he and others wanted to send some mail to her house involving pickup truck and car titles. She also related observing the appellants using a cutting torch on the frame of a late model Ford truck in a garage in Kansas City, Kansas. Smith and Downen were observed by a Bob Williams working on a 1967 to 1969 Chevrolet pickup truck matching the description of the vehicle traded to Gary Goodwin.

Counts 5 and 6 involved charges of concealing and selling a 1970 Ford pickup truck which had been stolen in Joplin, Missouri, and driven to Overland Park, Kansas. It bore VIN F107KG55948. Joe Downing testified that a blue 1970 Ford one-half ton pickup truck owned by him had been stolen at Joplin, Missouri, in late March, 1972, and recovered at Overland Park, Kansas, about three weeks later. Downing's father testified in confirmation of his son's ownership of and the theft of the vehicle. Warsop, a used car dealer in Overland Park, Kansas, testified that a vehicle later identified as Downing's was brought to his place of business by one James Hilt who, throughout the record, is identified as an associate of the appellants in the various transactions. It was ascertained that the VIN plate on this vehicle had been tampered with, i. e., changed to F1OGKJ58951, and that the paint code and body style did not match. Other evidence disclosed that a 1970 Ford pickup truck owned by Mr. and Mrs. Burnfin had been wrecked, sold for salvage through a Missouri used car firm, and thereafter sold to Downen in early March, 1972. The VIN on this vehicle had been transferred to the vehicle brought to Overland Park by Hilt. Ann Fox testified that she had seen Smith driving a late model blue Ford pickup truck into a garage in Kansas City, Kansas, and that Smith had told her that he got the vehicle at Joplin, Missouri. She stated that she had observed cutting activity relating to the vehicle, and that she was thereafter asked to pose as Mr. Burnfin's girl friend in an effort to expedite the sale of the pickup truck. Some of the documents relating to the vehicle involved in the salvage transaction were identified as containing appellant Smith's handwriting.

Count 8 charged appellants with concealing and selling a 1968 Ford pickup truck which had been stolen from John L. Danuser in Fulton, Missouri, on February 17, 1972, bearing VIN F1OYKD33007. Danuser testified that he recovered the vehicle in Kansas City, Kansas, in May, 1972. Although the VIN had been welded over and the other VIN plate removed, he was able to identify the vehicle by reason of certain peculiarities. The vehicle then contained a door plate with a VIN F1OAKDO3261 and a title evidencing assignment to Downen. Roy Hilt, Sr., testified that Jim Hilt, who had been previously identified by Ann Fox as being involved in the illegal transactions of Downen and Smith, had brought the truck to Kansas City, Kansas, where he (Roy Hilt) traded some other vehicles to Jim Hilt for the 1968 pickup truck. There was evidence that when this vehicle was later examined, it was discovered that the true VIN plate had been burnt off of the frame. The false plate was easily removed from the left door. A Robert

**318**

Guinn, employed by a St. Joseph, Missouri, salvage firm, testified that he sold a salvaged 1968 Ford pickup truck, bearing the exact VIN found on the left door, to Downen a year and a half or two years previously. He identified Downen in the courtroom.

## I.

Appellants allege Trial Court error in denial of their Motions for Judgment of Acquittal as to Counts 1, 5, 6 and 8. They contend that there was not substantial evidence to support the verdicts of guilty. We disagree.

The appellants concede that in passing upon the sufficiency of the evidence to support a verdict of guilty, it is well established in this Circuit that the appellate court does not weigh conflicting evidence nor consider the credibility of the witnesses and, further, that it must view the evidence, both direct and circumstantial, in the light most favorable to the prosecution, together with all reasonable inferences that may be drawn therefrom. United States v. Addington, 471 F.2d 560 (10th Cir. 1973); United States v. Ireland, 456 F.2d 74 (10th Cir. 1972); United States v. Weiss, 431 F.2d 1402 (10th Cir. 1970). And in passing on a post-guilty Motion for Acquittal and/or for New Trial, the Trial Court must apply the same tests. Goff v. United States, 446 F.2d 623 (10th Cir. 1971); Lewis v. United States, 420 F.2d 1089 (10th Cir. 1970); Mason v. United States, 408 F.2d 903 (10th Cir. 1969), cert. denied 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971); Mares v. United States, 409 F.2d 1083 (10th Cir. 1968), cert. denied 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969).

We have held that a conviction based upon circumstantial evidence only, cannot be objected to on that ground alone. United States v. Brown, 446 F.2d 1119 (10th Cir. 1971); Myers v. United States, 415 F.2d 318 (10th Cir. 1969). Furthermore, we have held that one can be convicted on the uncorroborated testimony of an accomplice or an informer. United States v. Owens, 460 F.2d 268 (10th Cir. 1972); Johns v. United States, 227 F.2d 374 (10th Cir. 1955); Todd v. United States, 345 F.2d 299 (10th Cir. 1965).

Appellants urge us to apply the rule that, in circumstantial evidence cases, the inferences to be drawn from the evidence must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence, or at least the circumstantial evidence must do more than raise a mere suspicion of guilt, citing Davidson v. United States, 411 F.2d 75 (10th Cir. 1969). We observe that this is not exclusively a circumstantial evidence case, but even so, we have reviewed this record mindful of this language in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946):

> Guilt . . . . remains individual and personal, even as respects conspiracies. * * * When many conspire, they invite mass trial . . . . Even so, the proceedings are exceptional to our tradition and call for use of every safeguard to individualize each defendant in relation to the mass.

328 U.S. at 772–773, 66 S.Ct. at 1252. One of the burdens imposed on the government, in keeping with "the call for use of every safeguard", is proof that each defendant charged with conspiracy must have the criminal intent necessary to meet the requirements set forth in the substantive offense. Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959). The essence of the crime of conspiracy as defined in 18 U.S.C.A. § 371 is an agreement between two or more persons to commit an offense against the United States, supplemented with overt action by one or more of the conspirators to effectuate the agreement. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). In accordance there-

with, we have held that mere knowledge, approval or acquiescence in the object of the conspiracy, without an agreement to cooperate in achieving such object and purpose, does not make one a party to a conspiracy. Jones v. United States, 365 F.2d 87 (10th Cir. 1966).

■ It would serve no useful purpose to recite in detail the complicated intertwining evidence contained in the long record before us in order to justify the guilty verdicts found by the jury as the sole trier of fact. We hold that there is substantial evidence in the record supporting the jury verdicts of guilty, and the Trial Court's denial of the appellants' post-guilty Motions for Acquittal and/or New Trial. United States v. Ramsdell, 450 F.2d 130 (10th Cir. 1971); United States v. Mecham, 422 F.2d 838 (10th Cir. 1970).

■ The court of appeals will not sift the record in order to make an independent determination of the sufficiency of the evidence. Golubin v. United States, 393 F.2d 590 (10th Cir. 1968), cert. denied 393 U.S. 831, 89 S.Ct. 100, 21 L.Ed.2d 102 (1968). Appellate courts cannot try a case de novo, and Trial Court findings based on sharply conflicting evidence are conclusively binding on appeal, United States v. 79.95 Acres of Land, More or Less, In Rogers County, State of Oklahoma, 459 F.2d 185 (10th Cir. 1972). Jurors are charged with the duty of assessing the credibility of witnesses and determining the weight to be given any testimony, taking into consideration the appearance and general demeanor of each and every witness. United States v. Spoonhunter, 476 F.2d 1050 (10th Cir. 1973); United States v. Miller, 460 F.2d 582 (10th Cir. 1972); United States v. Sierra, 452 F.2d 291 (10th Cir. 1971).

## II.

Appellants argue that the Trial Court erred in allowing Exhibit 50, a blackboard chart prepared by the Government, summarizing its theory of the case, to remain before the jury throughout the trial and to be sent to the jury room during jury deliberations. They argue that the exhibit was not admitted into evidence, was not admissible evidence, and that its use was extremely prejudicial to them.

The blackboard "chart" had been prepared by the Government marked Exhibit 50, and presented to the Court and counsel for appellants, out of the presence of the jury, prior to commencement of trial. It contained in summary form the Government's "case" as to each count in the indictment, including a brief description of each vehicle involved, the vehicle VINS, with dates noted when the respective vehicles were stolen and later recovered.

The record does not reflect that the exhibit was either offered or received in evidence. Prior to trial, counsel for appellants objected to its demonstrative use from an evidentiary point of view, until and unless the Government had introduced in evidence facts supporting each notation contained on the blackboard chart. In addition, the appellants objected to the prejudicial effect of permitting the Government to "select" certain evidence for special treatment in that it would be continually "in front" of the jury. They further argued that, assuming that all of the evidence on the backboard chart had been presented by the Government and admitted, then and only then could the Government employ it, and then only in closing arguments. The Government, on the other hand, contended that the blackboard chart was needed in order to avoid total confusion on the part of the jury, in view of the complicated factual transactions. The Court ruled that the blackboard chart could be used as a demonstrative exhibit.

The Trial Court gave special cautionary instructions to the jury that the blackboard chart was not evidence, and was merely being permitted to be shown them in order to aid them in keeping track of the various vehicles involved. The Court observed that the controlling thing is the evidence and not what is on the blackboard and, that at the conclu-

sion of the Government's case, "if they haven't hooked these things up, of course, it can be stricken and removed." The Court carefully admonished the jury with regard to the precise and limited purpose of the exhibit during trial. Further, the Court gave a supplemental admonition after the jury had retired to deliberate, when, at the specific request of the jury foreman, and over the objection of appellants, the Court permitted the blackboard chart to be taken into the jury room. The Court painstakingly instructed the jury that matters on the blackboard contained only the Government's theory of the case and were not evidence. The jury received the blackboard at 11:45 a. m., recessed for lunch and returned for deliberations at about 1:00 p. m. The jury was returned into the courtroom at 3:00 p. m., at which time the verdicts were announced.

■ We recently reaffirmed the rule that whether an indictment may be taken to the jury room is a matter within the sound discretion of the Trial Court. United States v. Skolek, 474 F.2d 582 (10th Cir. 1973). If an indictment is taken to the jury room the Court must give a cautionary instruction that it is not in evidence and is not to be treated as such. *Skolek, supra*; Little v. United States, 73 F.2d 861 (10th Cir. 1934); United States v. Davis, 437 F.2d 928 (7th Cir. 1971). We have also held that the Trial Court has wide discretion with respect to the order of proof and of permitting a party to re-open his case after he has rested. United States v. Moehring, 446 F.2d 516 (10th Cir. 1971); United States v. Keine, 424 F.2d 39 (10th Cir. 1970), cert. denied 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970); Massey v. United States, 358 F.2d 782 (10th Cir. 1966), cert. denied 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105 (1966). In the same vein, we have held that it is within the discretion of the Trial Court: (1) to allow a witness to testify as to conclusions [United States v. Wheeler, 444 F.2d 385 (10th Cir. 1971)]; (2) to participate in the trial by asking questions of witnesses in or-

der to ascertain facts, even to the extent of asking leading questions [United States v. Wheeler, *supra*; McBride v. United States, 409 F.2d 1046 (10th Cir. 1969), cert. denied 396 U.S. 938, 90 S.Ct. 282, 24 L.Ed.2d 240 (1969)]; and (3) to comment on the evidence, carefully avoiding any infringement on the jury's exclusive right to determine issues of fact [Lowther v. United States, 455 F.2d 657 (10th Cir. 1972), cert. denied Lowry v. United States, 409 U.S. 857, 93 S.Ct. 114, 34 L.Ed.2d 102 (1972); Massey v. United States, *supra*; Ayash v. United States, 352 F.2d 1009 (10th Cir. 1965)].

■ Thus, the touchstone for our determination is whether the record evidences prejudice to the appellants by reason of the jury's view of the blackboard chart. We hold that nothing contained on the blackboard chart could have prejudicially influenced the jurors' verdicts, in light of the careful and detailed cautionary instructions given by the Trial Court that it was not evidence and contained information relating only, in part, to the Government's theory of the case which must be proved beyond a reasonable doubt in order to have evidentiary value. The record evidences, and the jury verdicts confirm, that the Government did prove, beyond a reasonable doubt, all of the matters contained on the blackboard.

■ We have held that it is within the discretion of the Trial Court, absent abuse working to the clear prejudice of the defendant, to permit the display of demonstrative or illustrative exhibits admitted in evidence both in the courtroom during trial and in the jury room during deliberations. Taylor v. Reo Motors, Inc., 275 F.2d 699 (10th Cir. 1960); Ahern v. Webb, 268 F.2d 45 (10th Cir. 1959); Millers' National Insurance Company, Chicago, Illinois v. Wichita Flour Mills Company, 257 F.2d 93 (10th Cir. 1958); Carlson v. United States, 187 F.2d 366 (10th Cir. 1951). In *Taylor, supra,* the jury was permitted to take to the jury room during deliberations a heat exchanger where certain jurors dismantled and reassembled it to

demonstrate or test the truth of statements made concerning its functioning. In *Ahern, supra,* certain photocopies of hospital records of the plaintiff-patient were admitted in evidence with sole limitation that these records were not to be used for statements of other doctors that might be mentioned in them. These records were not permitted to go to the jury room after it had commenced its deliberations. We reiterated the rule that the decision as to whether exhibits should be sent to the jury room rests within the sound discretion of the Trial Court. In Millers' National Insurance Company, *supra,* we held that the Trial Court did not err in permitting moving pictures of experiments conducted by plaintiff's witnesses to be exhibited to the jury in view of the fact that such pictures were presented to show principles, as testified to by an expert witness, and not to show what actually occurred, and jury was so instructed. In *Carlson, supra,* we held that the Court did not err in admitting exhibits which were compilations of figures gathered from a variety of other exhibits in evidence, which reduced the figures to concise form. We there observed that the data shown on the exhibits was contained in other exhibits in evidence, and that reducing it to a simpler form aided the jury and did not prejudice the rights of appellants. To the same effect, we hold that the submission of papers, documents or articles, whether or not admitted in evidence, to the jury for view during trial or jury deliberations, accompanied by careful cautionary instructions as to their use and limited significance, is within the discretion accorded the Trial Court in order that it may guide and assist the jury in understanding and judging the factual controversy. Shane v. Warner Mfg. Corp., 229 F.2d 207 (3rd Cir. 1956), dismissed, 351 U.S. 959, 76 S.Ct. 860, 100 L.Ed. 1481 (1956); Kuhns v. Brugger, 390 Pa. 331, 135 A.2d 395, 68 A.L.R.2d 761; 5B C.J.S. Appeal and Error § 1782; 89 C.J.S. Trial § 467.

The appellants have alleged prejudice, but they have failed to convince us of its existence by cogent argument. They would have us rely upon bare conjecture of prejudice in order to convert the blackboard's use in the courtroom and during the jury deliberation into plain error. This court will not usurp the Trial Court's discretion absent a clear showing of abuse and resulting prejudice. United States v. Brumley, 466 F.2d 911 (10th Cir. 1972), cert. denied 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973); United States v. Kienlen, 415 F.2d 557 (10th Cir. 1969). No such abuse and prejudice has been shown.

### III.

Appellants contend that the Trial Court erred in giving Instruction Number 30, in that it was inconsistent with the appellants' right to be proved guilty beyond a reasonable doubt.

The instruction complained of and given by the Court reads:

There is nothing peculiarly different in the way a jury is to consider the proof in a criminal case from that in which all reasonable persons treat any question depending upon evidence presented to them. You are expected to use your good sense; consider the evidence for only those purposes for which it has been admitted, and give it a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

Appellants argue that while the instruction is similar to that contained in 1 Devitt and Blackmar, Federal Jury Practice and Instructions § 17.06 (2nd Ed. 1970), the Trial Court omitted the language, "If the accused be proved guilty beyond reasonable doubt say so. If not so proved guilty, say so.", and the further phrase, ". . . and remember as well that the law never impoes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." Accordingly, appellants urge that the instruction, as given, intruded upon their right to be proved guilty beyond a reasonable doubt.

**322**

Appellants acknowledge that the Court did not omit any material instruction. Instead, they seem to contend that because of the order in which the Court submitted the instructions, that the jury likely associated the "burden of proof beyond a reasonable doubt" instruction *only* with the definitions of the crimes involved, and to the areas of credibility and inferences.

We have carefully reviewed each of the instructions given by the Court. They were well considered, comprehensive and clear. The Court made it abundantly clear that the prosecution's burden of proof beyond a reasonable doubt applied to each and every essential element of the offenses charged. The Court made repeated references to the Government's obligation to prove the appellants' guilt beyond a reasonable doubt, including one specific instruction defining those terms.

The trial was lengthy. It involved a great deal of evidence. The jury's individualized verdicts, we believe, demonstrate that it had no difficulty following the Court's instructions and applying them on an individual basis to Downen and Smith. We hold that instructions fairly and adequately guided the jurors in their deliberations.

■■■ The challenged instruction, when considered in context with all of the instructions given, and the closing remarks of the Trial Court, show that the jurors were not misled and that no error was committed. The instructions were ringed with charges that the burden of proof is upon the Government to establish each of the essential elements of each of the offenses charged. Just as we observed in United States v. Smaldone, 484 F.2d 311 (10th Cir. 1973), it is impossible to conceive a jury shifting the burden of proof or being misled as to the necessity for the Government to prove specific intent beyond all reasonable doubt. See also United States v. Woodring, 464 F.2d 1248 (10th Cir. 1972); United States v. Tijerina, 407 F.2d 349 (10th Cir. 1969), cert. denied 396 U.S. 843, 90 S.Ct. 76, 24 L.Ed.2d 93

(1969); Troutman v. United States, 100 F.2d 628 (10th Cir. 1938); Tingley v. United States, 34 F.2d 1 (10th Cir. 1929).

Affirmed.