In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2019

JOHN BAUGH, by and through his
Wife and Next Friend, SHARON
BAUGH,

*Plaintiff-Appellant*,

*v.*

CUPRUM S.A. DE C.V.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 04204 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED DECEMBER 3, 2012 — DECIDED SEPTEMBER 13, 2013

Before WOOD and HAMILTON, *Circuit Judges*, and DARROW,
*District Judge.*[*]

HAMILTON, *Circuit Judge.* This appeal requires us to clarify
what is meant when an exhibit is labeled "demonstrative" and

[*] The Honorable Sara Darrow of the Central District of Illinois, sitting by
designation.

is not actually admitted into evidence. In this product liability trial, a defense expert illustrated his testimony by using an exemplar of the product in question, a ladder that had collapsed while the plaintiff was using it. Although plaintiff had objected to use of the exemplar ladder as substantive evidence, the court allowed its use for solely demonstrative purposes. During jury deliberations, the jury asked to see, touch, and step on the ladder. Over plaintiff's objections, the district court sent this object, which was never admitted into evidence, to the jury for use during its deliberations. We hold that it was an abuse of discretion to send this object to the jury over a party's objection when it was not admitted into evidence during trial. We also hold that the error was not harmless, so we reverse the district court's judgment and remand for a new trial.

I.   *Facts*

Plaintiff John Baugh suffered a severe brain injury when the Cuprum ladder he was using to clean his gutters buckled and collapsed. Baugh's wife Sharon brought this suit on his behalf against Cuprum S.A. de C.V. alleging defective design and negligence. There were no eyewitnesses to the incident. As a result of the injury, Mr. Baugh could not testify about what happened.

On December 21, 2010, about three months before trial, Cuprum informed plaintiff's counsel that it intended to use an exemplar of the actual ladder at trial. The exemplar ladder was new but had been built to the exact specifications of the ladder Mr. Baugh had been using. In a pretrial conference on February 1, 2011, the exemplar ladder was marked as an exhibit "for Demonstrative Purposes." Plaintiff objected to any

use of the new exemplar ladder. Discovery had closed two years earlier, and the ladder had not been included in Cuprum's expert disclosures.

In response to the objection, Cuprum explained, "it's simply demonstrative exhibits that we'll use during the direct examination of [Cuprum's expert]. … And these exhibits are demonstrative. They are not substantive evidence. They are not to be admitted for substantive evidence. It's just simply to demonstrate and help the jury understand his testimony." R. 300-3 at 67–68. The district judge determined that since the ladder was being offered only as a demonstrative exhibit, plaintiff's objections to untimely disclosure were irrelevant: "[T]he fact that it wasn't disclosed in connection with the experts' reports isn't by itself problematic to me if what we are talking about is demonstrative." R. 300-3 at 68. The court thus permitted the ladder to be displayed and used in the courtroom during trial testimony by Cuprum's expert.

Cuprum used the exemplar ladder during trial to argue that, contrary to the design defect theory offered by plaintiff's expert, the ladder would not collapse under a normal load with all four legs on the ground. Cuprum's expert presented testimony and video in which he tested the strength and stability of the ladder. The video also showed him performing other tests that included jumping on the ladder as if it were a pogo stick and tipping the ladder in different positions.

The jury began its first day of deliberations around noon. As a demonstrative exhibit, of course, the ladder was not sent to the jury for use in deliberations. After about two hours, though, the jury sent a note to the judge asking to see the

exemplar ladder. Tr. 1301. The judge asked if there were any
objections to the jury's request. Plaintiff's counsel objected on
the basis that the ladder "was introduced for—or brought into
the courtroom for demonstrative purposes. … It was not
offered into evidence by either side, and no witness did
anything other than refer to it. And I respectfully say that it
would be highly improper to have that demonstrative piece of
equipment go to the jury." Tr. 1301–02. The judge initially
agreed with plaintiff, noting that the ladder had been offered
and used only as a demonstrative exhibit and that "demon-
strative evidence is normally not sent back to the jurors." Tr.
1302.

The judge then asked plaintiff's counsel to explain how
plaintiff would suffer any prejudice if the ladder were allowed
in the jury room during deliberations. Plaintiff's counsel
argued that the prejudice resulted from the fact that the ladder
had been originally labeled as a demonstrative exhibit and that
both parties agreed that it would not be admitted as substan-
tive evidence. Counsel said he had relied on this assurance,
provided by the court in the pretrial conference where his
objection had been overruled precisely because the ladder
would be used only as a demonstrative exhibit. Counsel also
said he had developed his trial strategy on the assumption that
the ladder was not substantive evidence that might be avail-
able to the jury during its deliberations. Plaintiff's counsel
framed his objection on that basis: "It's a piece of demonstra-
tive evidence, and I think the rules are pretty clear—or at least
the practice in this courthouse, as far as I have known, has
never been that they go back [to the jury]." Tr. 1302. Plaintiff's
counsel explained that if he had known the ladder might go

back to the jury room, he would have had his own experts test the ladder. Tr. 1301–03.

The district judge then overruled plaintiff's objection and allowed the jurors to view the exemplar ladder in the court-room. The judge sent the following note to the jury: "Dear Jurors: The exemplar ladder is a demonstrative exhibit. It was not admitted in evidence. You may, if you wish, step into the courtroom to look at the exemplar ladder, but we will not be sending it into the jury room during your deliberations." Tr. 1312–13. After receiving the note, however, the jury seemed to have lost interest in the ladder and did not actually look at it that day.

The second day, though, the jury renewed its request. Tr. 1316. Plaintiff's counsel renewed his objection: "There was never any representation that ladders were going to be not only used in the courtroom but the jurors would have access to them … ." Tr. 1319. Once again, the judge asked plaintiff's counsel to identify the prejudice that would result from allowing the jury to see and touch the ladder. The judge again rejected counsel's argument that the prejudice came from the fact that plaintiff did not have any warning that the exemplar ladder would go to the jury: "Again, apart from the fact that this is not what you were expecting or planned for, I want to know what the prejudice is. How is your client prejudiced?" Tr. 1320–22. Plaintiff's counsel tried again: "[I]f I knew exemplars were going to be there, my experts would have advised me—if I knew the individuals were going to be playing with exemplar ladders and so forth in the courtroom, I would have spoken to my experts. I don't know what they would have told me. But that's one of the reasons that we have cutoffs on

discovery." Tr. 1324. The court overruled plaintiff's objections and permitted the jury to enter the courtroom by themselves and to look at the ladder. Tr. 1333.

Approximately twenty minutes later, the jury sent a note asking if they could step on the ladder. Plaintiff's counsel again objected and raised additional objections regarding potential juror reconstruction of the accident. Tr. 1334–38. "And as your Honor said, taking demonstrative evidence into a jury room is something which is—I don't think it's ever done." Tr. 1334. He concluded his argument: "I know my client and I have the right to assume that there was not going to be demonstrative evidence played with in the jury room." Tr. 1338. The district court reserved ruling until the following day, at which point plaintiff's counsel explained: "[T]he point is that I was examining the exemplars that they were going to be using in testing, not the exemplars that are going to be taken, played with by the jury and taken into the jury room." Tr. 1360.

Ultimately, on the third day of deliberation, the court allowed the ladder to go into the jury room itself with a note: "Pursuant to your request, I am allowing the exemplar ladder to be taken into the jury room. You may fully examine the ladder. Under no circumstances are you to endeavor to reconstruct the occurrence." Tr. 1363. The letter and exemplar ladder were delivered to the jury room at approximately 10:09 a.m. Tr. 1365. At 1:48 p.m., the jury returned a verdict in favor of Cuprum. Tr. 1367. The district court entered judgment on the verdict, and this appeal followed.

II. *Analysis*

"Generally, it is within the trial court's discretion to determine which exhibits are provided to the jury during deliberations; we review this decision only for a clear abuse of discretion." *Deicher v. City of Evansville*, 545 F.3d 537, 542 (7th Cir. 2008). We defer to the district court's handling of exhibits admitted into evidence but must ensure that "the district court has exercised its discretion in a reasonable manner." *Id.* If a party argues that properly admitted exhibits had some sort of improper influence on the jury, reversal also requires a showing of prejudice. *Id.* at 543. Those are the general rules for exhibits admitted into evidence.

Demonstrative exhibits that are *not* admitted into evidence pose quite different issues. The general rule is that materials not admitted into evidence simply should not be sent to the jury for use in its deliberations. *Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 483 (7th Cir. 2000) (sending three unadmitted documents to jury was "sloppy" and an error, but harmless); *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1142–43 (7th Cir. 1992) (error to send unadmitted damages summary to jury room for deliberations, but also harmless); see also *United States v. Holton*, 116 F.3d 1536, 1542 (D.C. Cir. 1997) ("To protect jury deliberations from improper influence, we ordinarily restrict the jury's access only to exhibits that have been accepted into evidence … ."). The district court failed to adhere to this limit when, despite plaintiff's objection, the court deliberately submitted the unadmitted ladder to the jury during deliberations as if it were admitted, substantive evidence. We conclude that the court's action was an abuse of discretion and was not harmless.

   A.  *The Ambiguity of the Term "Demonstrative"*

   The term "demonstrative" has been used in different ways
that can be confusing and may have contributed to the error in
the district court. In its broadest and least helpful use, the term
"demonstrative" is used to describe any physical evidence. See,
*e.g.*, *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1231 (7th Cir. 1996)
(using "demonstrative evidence" as synonym for physical
exhibits). When the term is used in this way, demonstrative
exhibits may range from Shakespeare's version of Marc
Antony's funeral oration displaying the bloody toga in *Julius
Caesar*, as noted in *Finley*, to the knife in *Twelve Angry Men*. As
jurors have become more visually oriented, counsel in modern
trials seek to persuade them with an ever-expanding array of
objects, maps, charts, displays, summaries, video reconstruc-
tions, computer simulations, and so on. See *United States v.
Burt*, 495 F.3d 733, 740 (7th Cir. 2007).

   As Professors Wright and Miller lament, the term, "demon-
strative" has grown "to engulf all the prior categories used to
cover the use of objects as evidence. … As a result, courts
sometimes get hopelessly confused in their analysis."
22 Charles Alan Wright & Arthur R. Miller, Federal Practice
and Procedure § 5172 (2d ed.); see also 5 Christopher B.
Mueller & Laird C. Kirkpatrick, Federal Evidence § 9:22 (3d
ed.) (identifying at least three different uses and definitions of
the term "demonstrative" evidence, ranging from all types of
evidence, to evidence that leaves firsthand sensory impres-
sions, to illustrative charts and summaries used to explain or
interpret substantive evidence). The treatises struggle to put
together a consistent definition from the multiple uses in court
opinions and elsewhere. See 2 McCormick on Evidence § 212

n.3 (Kenneth S. Broun ed., 7th ed.) (recognizing critique of its own use of "single term 'demonstrative evidence,'" noting that this approach "joins together types of evidence offered and admitted on distinctly different theories of relevance").

Our decision today does not seek to reconcile all of those uses of the term, but we do seek to clarify what a jury may and may not consider in deliberations. Without the consent of all parties, a deliberating jury may not consider exhibits not actually admitted into evidence. In this case, the court allowed the exemplar ladder to be used in trial only as a "demonstrative" exhibit, only for demonstrative purposes. The court and counsel understood this ruling to mean that the exemplar ladder was not actually admitted into evidence and would not be available to the jury during deliberations. That was the basis of the court's pretrial decision to overrule plaintiff's objection to all use of the exemplar ladder. The term "demonstrative" thus was used to refer to an object or document that could be displayed to the jurors to help them understand the substantive evidence (testimony or other objects or documents) by interpreting, summarizing, or explaining it, but that would not be available during deliberations.

### B.   *"Demonstrative Exhibits," Narrowly Defined*

As the term was used in the district court and is used in this opinion, labeling an exhibit "demonstrative" signifies that the exhibit is not itself evidence—the exhibit is instead a persuasive, pedagogical tool created and used by a party as part of the adversarial process to persuade the jury. Robert D. Brain & Daniel J. Broderick, *The Derivative Relevance of Demonstrative Evidence: Charting Its Proper Evidentiary Status*, 25 U.C. Davis L.

Rev. 957, 961 (1992) ("Demonstrative proof has only a second-
ary or derivative function at trial: it serves only to explain or
clarify other previously introduced, relevant substantive
evidence."). These pedagogical devices are used to aid the jury
in its understanding of the evidence that has already been
admitted. "[P]edagogical charts or summaries may include
witnesses' conclusions or opinions, or they may reveal infer-
ences drawn in a way that would assist the jury. But … in the
end they are not admitted as evidence." *United States v. Janati*,
374 F.3d 263, 273 (4th Cir. 2004), citing 6 Jack B. Weinstein and
Margaret A. Berger, Weinstein's Federal Evidence, § 1006.04[2]
(Joseph M. McLaughlin ed., 2d ed. 2003); see also *Gomez v.
Great Lakes Steel Div. Nat'l Steel Corp.,* 803 F.2d 250, 257–58 (6th
Cir. 1986) (same).

When the term is used this way, demonstrative exhibits are
meant to "illustrate or clarify a party's position," and they are
by definition "less neutral in [their] presentation" and thus are
not properly considered evidence. *United States v. Milkiewicz*,
470 F.3d 390, 396–98 (1st Cir. 2006) (internal citations omitted).[1]
They instead aim to clarify, color, or "organize or aid the jury's
examination of testimony or documents which are themselves
admitted into evidence" to persuade the jury to see the
evidence in a certain light favorable to the advocate's client.
*United States v. Bray*, 139 F.3d 1104, 1111–12 (6th Cir. 1998),
quoting *Gomez*, 803 F.2d at 257–58. Thus "[w]hen considering

---

[1] The term "demonstrative" does not appear in the text of the Federal Rules
of Evidence, nor does it appear in a single state evidence code. Brain &
Broderick, *supra*, at 1013. This absence makes sense. When the term is used
as it was used in this case by the court and counsel, demonstrative exhibits
are not evidence at all.

the admissibility of exhibits of this nature, it is critical to distinguish between charts or summaries *as evidence* and charts or summaries *as pedagogical devices.*" *United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991) (internal citations and quotations omitted).[2]

When the term is applied correctly, it allows parties and the court to avoid protracted disputes regarding the admissibility of demonstrative exhibits that might arise if such an exhibit were being offered as substantive evidence. By labeling an exhibit "demonstrative," the party using it may also gain something—some leeway to use the exhibit as an advocacy tool that the party might not enjoy if trying to admit the exhibit as substantive evidence. With this understanding of the term, the common phrase "demonstrative evidence" becomes a bit of an oxymoron. We will not try to police the use of the phrase, but there is value to using the term more narrowly and carefully, as it was used in the district court in this case, so that it does not apply to an exhibit that is properly admitted as substantive evidence through the Federal Rules of Evidence.[3]

---

[2] Nothing in this opinion should be understood to call into question our cases permitting juries to consider transcripts of recorded conversations during deliberation. See, *e.g.*, *United States v. Breland*, 356 F.3d 787, 794–95 (7th Cir. 2004).

[3] The term "demonstrative" does appear once in the 1972 advisory committee's note to Federal Rule of Evidence 611(a), which gives trial judges the power to control the "mode" of testimony and "has been construed to allow the court to permit or prevent the use of 'demonstrative evidence.'" Wright & Miller, *supra*, § 5172. The relevant part of the advisory committee's note said: "Item (1) restates in broad terms the power and obligation of the judge as developed under common law principles. It

(continued...)

Offering and admitting charts, summaries, models, maps, replicas, and so on as substantive evidence rather than as "demonstrative" exhibits sends an important signal. It alerts parties to the fact that the exhibit will become part of the actual evidence and therefore may well be available to the jury during deliberation. When an exhibit is offered as substantive evidence, parties know they must make any objections they might have to the evidence at that point. Conversely, when an exhibit is allowed to be used for only demonstrative purposes, the judge and the parties understand that the exhibit is argumentative and persuasive in nature. "[S]uch pedagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during deliberations." *Wood*, 943 F.2d at 1053.

Demonstrative exhibits that are not admitted into evidence should not go to the jury during deliberation, at least not without consent of all parties. We would not allow a lawyer to accompany the jury into the deliberation room to help the jurors best view and understand the evidence in the light most favorable to her client. The same goes for objects or documents used only as demonstrative exhibits during trial.

---

[3] (...continued)

covers such concerns as … the use of demonstrative evidence … and the many other questions arising during the course of a trial which can be solved only by the judge's common sense and fairness in view of the particular circumstances." Fed. R. Evid. 611(a) advisory committee's note. The advisory committee's note used the term "demonstrative" in the broad sense of the term to refer to items actually admitted into evidence, which may present a variety of issues for trial management. Those issues are of course left to the trial judge's discretion.

In sum,"demonstrative exhibits," when the term is used in the narrow sense, are *not* admitted as substantive evidence under the Federal Rules of Evidence. Therefore, this indicates to all parties that, absent their consent, those exhibits will not go to the jury during deliberations. If the "demonstrative" label is not applied consistently during the trial and jury deliberations, it may lull the opposing party into a false sense of complacency, leading him to waive valid objections to the admissibility of the demonstrative exhibit as substantive evidence.

If we were to affirm the district court's action here, allowing a demonstrative exhibit that was never admitted into evidence to be given to the jury for deliberations because the party opposing the action could not identify clear prejudice that might result, parties could not count on the classification of the exhibit as demonstrative during trial. Under that approach, a "demonstrative" exhibit could be transformed into substantive evidence during jury deliberations, after the close of evidence and without an opportunity to respond, rebut, or cross-examine. Going forward, parties would have to treat their opponents' "demonstrative" exhibits as potential substantive evidence and would have every incentive to raise objections as if the exhibits were substantive evidence. (In this case, of course, plaintiff did object before trial based on the late disclosure of the "demonstrative" ladder. The court acted reasonably in overruling the objection, but *only because the ladder would be only a demonstrative exhibit*.) The result, we fear, would be to undermine the ability to use truly demonstrative exhibits properly during trial when they would be helpful to juries.

C. *The Treatment of the Exemplar Ladder as Evidence*

In this case, the exemplar ladder was used during trial by the defense expert witness to illustrate his oral testimony. That is a classic and proper use of a demonstrative exhibit, and such use is properly left to the sound discretion of the judge presiding over the trial. See generally Fed. R. Evid. 611(a). The district court repeatedly recognized the distinction between demonstrative exhibits and substantive evidence during trial and after deliberations began. Yet the court eventually decided to cross this boundary by permitting the demonstrative exhibit to be treated as if it were substantive evidence and allowing the jury to see, touch, and manipulate it during deliberations.

As noted above, the general rule is that materials not admitted into evidence simply should not be sent to the jury for use in its deliberations. *Bankcard America*, 203 F.3d at 483; *Artis*, 967 F.2d at 1142–43. Nevertheless, the district court believed it had discretion to send the demonstrative exhibit, in the narrow meaning that both the district court and we have used here, to the jury for deliberations.

That belief may have been based on prior opinions that used the broader meaning of the term "demonstrative" to apply to all sorts of physical evidence that has been admitted into evidence, rather than the narrower, more precise meaning used by the district court and in this opinion. We said recently that we "review the district court's decision to send demonstratives to the jury room for abuse of discretion," and that this discretion is properly exercised when decisions to send the "demonstratives" are applied evenhandedly to both parties. *United States v. Natale*, 719 F.3d 719, 743–44 (7th Cir.

2013), citing *United States v. Salerno*, 108 F.3d 730, 742 (7th Cir. 1997). In both *Natale* and *Salerno*, however, the term "demonstrative" was being used in the broader sense. In both cases we were referring to exhibits that had actually been admitted into evidence. Neither case approved sending the jury exhibits that were not in evidence.

In *Natale*, for example, the "demonstrative" exhibit at issue was a diagram used by an expert witness to identify the different types of grafts used for two different heart procedures. The defendant was accused of Medicare fraud by billing for the more expensive procedure when he had performed the cheaper one. *Natale*, 719 F.3d at 724–25. During the trial, the expert witnesses had added labels to the diagrams to show the differences between the procedures. *Id.* at 743–44. When the diagrams were sent to the jury room, however, the labels were removed and the jury was left with only factual depictions of the grafts themselves and nothing more. *Id.*

For present purposes, the important point is that our opinion in *Natale* indicates that the "demonstratives" in question had in fact been *admitted into evidence* and that defendant Natale was not contesting that admission. *Id.* at 744. Similarly, the exhibit at issue in *Salerno* involved a scale model of the crime scene that the jury was allowed to examine during its deliberations. 108 F.3d at 742. And again, the key point for present purposes is that the model was in fact *admitted into evidence*. *Id.* It was "demonstrative" in the broad sense of the term, but because it was actually admitted into evidence, it could properly be made available to the jury during deliberations.

In both *Natale* and *Salerno*, we found no abuse of discretion where the district courts had been evenhanded in allowing admitted evidence into the jury room. This case, however, presents the different issue of sending the jury an exhibit that was never admitted into evidence. Neither case suggested that exhibits not admitted into evidence could be provided to the jury at the discretion of the trial court, which would have run contrary to the long-standing practice reflected in *Bankcard America*, 203 F.3d at 483, and *Artis*, 967 F.2d at 1142–43.

We acknowledge that the Tenth Circuit authorized a similar departure from the usual practice in *United States v. Downen*, 496 F.2d 314 (10th Cir. 1974), when it affirmed convictions in a fairly complex interstate vehicle theft case in which a government chart that organized the different stolen vehicles, dates, and counts of the indictment was allowed to go to the jury during deliberations. The chart itself had never been offered or admitted into evidence. The trial court gave detailed instructions to the effect that the chart was not evidence but contained only the government's theory of the case. Although the use of the chart might have been justified on quite narrow grounds, or perhaps found harmless, the Tenth Circuit explained its decision to affirm in sweeping language:

> [W]e hold that the submission of papers, documents or articles, whether or not admitted in evidence, to the jury for view during trial or jury deliberations, accompanied by careful cautionary instructions as to their use and limited significance, is within the discretion accorded the Trial Court in order that it may guide and assist the

> jury in understanding and judging the factual
> controversy.

496 F.2d at 321. The only federal authority that *Downen* cited for that broad statement was *Shane v. Warner Mfg. Corp.*, 229 F.2d 207 (3d Cir. 1956), *cert. dismissed*, 351 U.S. 959 (1956), a quite different case in which the Third Circuit had affirmed a verdict reached after the trial judge submitted *both* sides' damage calculations to the jury without admitting them into evidence but with careful instructions on their proper use. The Fifth Circuit followed *Downen* in *Big John, B.V. v. Indian Head Grain Co.*, 718 F.2d 143, 148–49 (5th Cir. 1983), when it affirmed a verdict reached after the jury was allowed to use a damages chart that had not been admitted into evidence.

We view both *Downen* and *Big John* as cases that departed from longstanding practice in this and other circuits and the learned treatises cited above, and as having done so with only the most tenuous support. In any event, we are aware of no case authorizing what happened here, where the district court overruled objections to an exhibit on the ground that it would be used only for demonstrative purposes and then, during jury deliberations, reversed course and treated the exhibit as if it had been admitted into evidence.[4]

---

[4] Since *Big John*, the Fifth Circuit appears to have followed the majority practice that we adhere to in this case. See *United States v. Harms*, 442 F.3d 367, 375 (5th Cir. 2006) (stating that demonstrative exhibits not admitted into evidence "should not go to the jury room absent consent of the parties"), quoting *United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 431 (5th Cir. 1985) (acknowledging lack of clarity in Fifth Circuit's case law on this point and explaining that

(continued...)

The district court repeatedly made clear to both parties that the exemplar ladder was being offered and used only as a demonstrative exhibit. Even if the defendant might have been able to have the ladder admitted as substantive evidence (a question we do not decide), both parties were entitled to notice of that possibility and the opportunity to raise objections. The decision to allow the ladder to go to the jury room during deliberations after it had been treated during trial as a demonstrative exhibit, and not as evidence, was therefore an abuse of discretion.

### D. *Error Not Harmless*

Finally, we consider whether the error might have been harmless. In cases where unadmitted materials were sent to juries during their deliberations, we have asked whether the error was harmless. See Fed. R. Civ. P. 61; *Bankcard America*, 203 F.3d at 483 (finding error harmless where three unadmitted documents sent to jury room duplicated extensive trial testimony and opposing party had thoroughly presented its side of the issue); *Artis*, 967 F.2d at 1142–43 (finding error harmless where chart summarizing plaintiff's damages inadvertently went to jury for deliberations; most damages were stipulated, and chart only repeated what jury had already heard). In both *Bankcard America* and *Artis*, we framed the issue

---

[4] (...continued)
charts and summaries not admitted into evidence should not be sent to jury room), citing 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 1006[07] (1983).

as whether there was a reasonable possibility that the unadmitted materials altered the jury's verdict.[5]

We conclude that the error was not harmless and that a new trial is required. We have reached this decision without considering the post-trial juror affidavit submitted by plaintiff that was the focus of much of the briefing. See *Artis*, 967 F.2d at 1142; Fed. R. Evid. 606(b). The external indications alone persuade us that the district court's error was not harmless.

First, in effect, plaintiff's counsel was lulled unintentionally into what turned out to be a false complacency that the ladder was not being offered as evidence, yet during jury deliberations, it was converted into a substantive piece of evidence that the jury could see, touch, handle, step on, and otherwise manipulate. Plaintiff never had an opportunity to plan for, mitigate, or rebut the effects of the ladder's introduction into jury deliberations and was prejudiced by his inability to respond to the ladder as substantive evidence.

Second, both sides had substantial evidence supporting their positions. The jury deliberations spanned three days, and the jury reached a verdict shortly after it had the opportunity to examine, step on, and manipulate the exemplar ladder, going well beyond the exposure they had to the ladder when it was used as a demonstrative exhibit during the trial. The

---

[5] In *Artis*, where the district court recognized the inadvertent error and found it harmless, we reviewed that determination for abuse of discretion. 967 F.2d at 1143. In *Bankcard America* and in this case, the district courts did not recognize the error and therefore did not evaluate its effect. See 203 F.3d at 483. As in *Bankcard America*, therefore, we consider the possibility of harmless error ourselves.

error may well have been decisive; we cannot say it was harmless.

We therefore agree with plaintiff. The district court permitted display of the ladder during trial exclusively for demonstrative purposes, which means that it should not have gone to the jury during deliberations. To change that decision after the jury began deliberating was an abuse of discretion that was not harmless to plaintiff. We therefore REVERSE the judgment and REMAND the case to the district court for a new trial.